UNITED STATES of America Plaintiff,

v.

Harold ROEBUCK Defendant.

No. CR.2002–171.

District Court,
Virgin Islands,
St. Croix Division.

Nov. 6, 2003.

Azekah E. Jennings, Eausa, Ernest F. Batenga, Ausa, St. Croix, VI, for the plaintiff.

Lee J. Rohn, St. Croix, VI, for the defendant.

## MEMORANDUM

MOORE, District Judge.

Only a psychic pleader could allege that because a defendant has published uncomplimentary statements concerning a judge, the latter will be unable to give his critic a fair and impartial trial. If such a fantastic procedure were permitted, a defendant could get rid of a judge by the simple expedient of publishing a scurrilous article, truthfully alleging that the article was published, and clinching the matter by asserting the bald conclusion that, since the article was uncomplimentary, the judge must of necessity be prejudiced against the publisher! [1]

The scurrilous article involved in this case is a letter written by Lee J. Rohn, the attorney for defendant Harold Roebuck, and published in the *St. Thomas Source,* a local online newspaper, on September 3, 2002.[2] Attorney Rohn wrote the letter in response to an editorial published in the *St. Thomas Source* that alleged politics, and not my performance as a judge, was the motivating factor behind opposition to my reappointment for another term as district judge.[3] Attorney Rohn's letter claimed that the opposition to my reap-

---

1. *United States v. Fujimoto,* 101 F.Supp. 293, 296 (D.Hawai'i 1951).

2. Letter of Lee J. Rohn, attorney St. Croix, to the *St. Thomas Source* (Sept. 3, 2002), *at* http://new.onepaper.com/stthomasvi/?v=d & i= & s=Commentary:Open+Forum & p =54558. The full text of the letter is attached as an Appendix.

3. The guarantee of life-time appointment under Article III is denied to district judges presiding in territories of the United States. Judges sitting in the District Court of the Virgin Islands are not Article III judges and, therefore, lack life tenure. *See* Revised Organic Act of 1954 § 21, 24; 48 U.S.C. § 1611 (2002). The Revised Organic Act of 1954 is found at 48 U.S.C §§ 1541–1645 (1995), *reprinted in* V.I. CODE ANN., Historical Documents, 73–177 (codified as amended) (1995) ["Revised Organic Act"]. The District Court of the United States Virgin Islands is an Article IV court and the district court judges are appointed for 10–year terms. *See* Revised Organic Act § 24; 48 U.S.C. § 1614(a); *United States v. George,* 625 F.2d 1081, 1089 (3d Cir.1980) (Maris, J.).

President George Herbert Walker Bush signed my 10–year commission as a district judge of the District Court of the on June 30, 1992 and my ten-year term accordingly ex-

pointment was driven not by politics but instead by alleged instances of judicial misconduct. The letter went on to provide the following accusations:

> Judge Moore's problems lie in the allegations of inappropriate behavior while he was on the bench. These include, but are not limited to, repeatedly being reversed by the Third Circuit [Court of Appeals], repeated disagreements with the judges of the Third Circuit, rude behavior toward attorneys practicing before him, including, but not limited to, refusing to grant a trial continuance to a seven months pregnant attorney despite a medical necessity; ordering attorneys to be in his court despite the fact that they were also supposed to be before the Third Circuit at the same time; complaints by jurors that they were coerced and harassed and subjected to ex parte instructions and conversations by Judge Moore while in jury deliberations; jurors complaints of being castigated after reaching a verdict because it was contrary to what Judge Moore would have decided; keeping the court house open late to accommodate the filing of a petition to keep poor housing out of a neighborhood that Judge Moore lived in, and then granting the motion despite a conflict that required recusal; repeatedly imposing sanctions without notice and a proper ability to respond; [and] being vindictive against litigants who took a position contrary to his.

Attorney Rohn then uses the letter she voluntarily published against me to argue that I must recuse myself from presiding over Roebuck's criminal trial because those accusations have caused me to be prejudiced against her. Although it appears that this time Attorney Rohn has filed similar motions in each of her pending cases, her motions are simply a rehash of her earlier blanket application to have me disqualified from all of her cases because I do not like her, which was summarily rejected by the Court of Appeals at oral argument from the bench. *See In re Recusal Motion,* 118 F.Supp.2d 622 (D.Vi. 2000), *aff'd from bench at oral argument,* 263 F.3d 56 (3d Cir.2001).

Here, as before, I will not allow Ms. Rohn to so crassly manipulate the justice system.

 The provision Attorney Rohn relies on is 28 U.S.C. § 455 which requires that I disqualify myself in any proceeding (1) where I have a personal bias or prejudice against a party or (2) in which my impartiality might reasonably be questioned. *See* 28 U.S.C. § 455(a-b). I first state that I harbor no actual bias or prejudice against Mr. Roebuck. Having no actual bias or prejudice, I next must assess whether a rational, objective member of the public who knows all of the relevant facts might fairly question my impartiality.[4] The only item Attorney Rohn has submitted to suggest that I have any antipathy toward Mr. Roebuck is my March 26, 2003 order shortening his time to file a response, if any, to the government's opposition to his motion to recuse. I exercised my discretion to require an earlier filing

---

pired on June 30, 2002. I continue to serve until I resign or my successor is sworn in.

4. *See, e.g., Edelstein v. Wilentz,* 812 F.2d 128, 131 (3d Cir.1987). In making these determinations, I need not accept all of Ms. Rohn's allegations as true. *See United States v. Sciarra,* 851 F.2d 621, 625 n. 12 (3d Cir.1988) ("There is considerable authority for the proposition that the factual accuracy of affidavits submitted pursuant to 28 U.S.C. § 455

may be scrutinized by the court deciding the motion for recusal.") (citations omitted); *see also Weatherhead v. Globe Int'l, Inc.,* 832 F.2d 1226, 1227 (10th Cir.1987); In re *Beard,* 811 F.2d 818, 826–27 (4th Cir.1987); *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir.1985); *Phillips v. Joint Legislative Comm. on Perf. & Expend. Review,* 637 F.2d 1014, 1019 n. 6 (5th Cir.1981).

under Rule 45 of Federal Rules of Criminal Procedure to make sure that I would have time to review the defendant's response before the hearing that was then scheduled for April 4th. Absent my order, the response would not have been due until six days after the hearing, as the defendant had not yet filed his motion to continue the hearing. No rational, objective member of the public who knows all of the relevant facts could possibly conclude from this procedural ruling that my impartiality might reasonably be questioned regarding Mr. Roebuck.

Having disposed of the only legally colorable basis for a motion to recuse, I turn to Rohn's reframing of her earlier claim that I had to recuse myself from all her cases because she thought I do not like her. This time she contends that I got so angry at her after her letter was published in the *St. Thomas Source* that I "lost all objectivity with regard to the cases in which she was attorney of record." In

making her argument, Attorney Rohn has badly misrepresented the record. First, I entered no blanket order of recusal from all of Lee Rohn's cases. After all, the Court of Appeals for the Third Circuit had summarily dismissed Ms. Rohn's similar claim that I had to recuse myself from all her cases.[5] Second, I entered recusal orders in only some, but not all, of Attorney Rohn's then-pending cases.[6] Third, I have not made any rulings in any of those cases from which I have recused myself. The *Selkridge* matter is one of those in which I have never entered an order of recusal. Thus, Attorney Rohn's claim that I deliberately "unrecused" myself just to be able to rule against her client is patently false. Although the magistrate judge inadvertently included *Selkridge* among those cases sent to the judge who had been designated to oversee the Rohn recusal cases for settlement negotiations,[7] the fact remains that I never recused myself from *Selkridge*.[8] I ruled on the facts and law that I believe governed the decision of the

---

**5.** *See In re Application for Change or Reassignment of Judge*, 263 F.3d 60 (3d Cir.2001); *In re Change or Reassignment of Judge Pursuant to 28 U.S.C. Sec. 144 & 155*, 263 F.3d 56 (3d Cir.2001).

**6.** I issued no order recusing myself "from all of the approximately thirty-four cases pending before [me]." I have never recused myself from any of the following cases: *Donastorg v. Innovative Communications Co.*, Civ. No.2002–97 (St. Croix Div.); *Mahoney v. Bulhof*, Civ. No.2001–154 (St. Thomas Div.); *Sexton v. Equivest*, Civ. No.2002–96 (St. Thomas Div.); *Collins v. Castle Acquisitions*, Civ. No.1999–212 (St. Thomas Div.); *Khan v. Soleimani*, Civ. No.2000–223 (St. Thomas Div.); *Green v. Honda Motor Co.*, Civ. No.2002–159 (St. Thomas Div.); *Soltau v. CTF St. Thomas Corp.*, Civ. No.1998–143 (St. Thomas Div.); *Domino Oil v. Phoenix Assurance Co.*, Civ. No.1996–99 (St. Thomas Div.); *Dabrowski v. Emerald Beach Corp.*, Civ. No.2001–121 (St. Thomas Div.); *Phillips v. Waterbay Mgmt. Corp.*, Civ. No.2000–72 (St. Thomas Div.); *Smith v. Merchant's Mkt.*, Civ. No.2002–14 (St. Thomas Div.); *Selkridge v. United of Oma-*

ha (Selkridge I), Civ. No.2001–143 (St. Thomas Div.); *Selkridge v. United of Omaha* (Selkridge II), Civ. No.2002–73 (St. Thomas Div.).

**7.** Senior United States District Judge Stanley Brotman was designated by the Chief Judge of the Circuit to deal with the Rohn recusal cases.

**8.** These facts distinguish the cases Attorney Rohn relied on in support of her motion for recusal. For example, in *Nelson v. Fitzgerald*, 403 P.2d 677 (Alaska 1965), the Supreme Court of Alaska found that the trial judge should have recused himself from the underlying criminal matter because he had previously issued a blanket recusal from any matter involving a particular firm because the judge acknowledged existing bias toward the firm. Here, I have issued no blanket recusal nor do I acknowledge any present bias toward Attorney Rohn. Likewise, in *State ex rel. McAllister v. Slate*, 278 Mo. 570, 214 S.W. 85 (1919), the Supreme Court of Missouri recused a judge from sitting on a case based on a perceived lack of impartiality from the

case. I understand my rulings are on appeal, and, as always, the Court of Appeals will have the last word if it disagrees with my decision.

I did recuse myself from *some* of Attorney Rohn's then-pending cases because her personal attack in the *St. Thomas Source* stung when I first read it. I reiterate that these recusal orders had absolutely nothing to do with any antipathy or prejudice against any of her clients or any concern that I could not be fair and impartial in handling their cases. Several months have now gone by and although I was initially upset at the viciousness of the letter, the passage of time has allowed me to reflect, and, as the saying goes, time heals all wounds. I have concluded that this was just Lee Rohn being Lee Rohn and doing what Lee Rohn thinks she must do to win. In other words, I believe Attorney Rohn's personal attack

on one of the two sitting judges in this jurisdiction was nothing more than a calculated litigation tactic that would be labeled judge shopping in most places.[9] I am saddened that Attorney Rohn seems convinced that it is necessary to litigate in this manner because she is a very successful and competent attorney, as I have always acknowledged. Nothing Lee Rohn does surprises me anymore, however, although subpoenaing all the federal judges in the jurisdiction is a high point of ingenuity and creativity in attempting to manipulate the system.[10] I do not believe, however, that an attorney should be allowed to use her calculated personal attack on a sitting judge as a technique to prevent that judge from presiding over any of her cases, especially in a small district with only two judges.

■ At this late date, any pain or anger I felt from Attorney Rohn's letter has long

judge's rulings against the government without the benefit of any argument and *not* on a series of unflattering newspaper articles allegedly inspired by government counsel. Finally, in *Haas v. Pittsburgh Nat. Bank*, 627 F.2d 677 (3d Cir.1980), the Third Circuit Court of Appeals merely found that the trial judge did not abuse his discretion in recusing himself after a series newspaper articles questioning his impartiality, not that he was compelled to do so.

9. In an affidavit submitted in support of her recusal motion, Attorney Rohn made the following statement: "I advised Magistrate Judge Barnard that after all of the work, time and effort that had been put into my previous efforts to obtain the recusal of Judge Moore from all of my cases because of his bias, all it took was a critical letter to the editor to get him to recuse himself from every single case."

10. Attorney Rohn issued subpoenas on every federal judge in the Territory to compel them to testify at the April 4th recusal hearing:

[T]he Honorable Raymond L. Finch, Chief Judge of the Virgin Islands, the Honorable Thomas K. Moore, District Court of the

Virgin Islands, the Honorable Geoffrey W. Barnard, Magistrate Judge, District Court of the Virgin Islands (Division of St. Thomas and St. John), and the Honorable Jeffery L. Resnick, Magistrate Judge, District Court of the Virgin Islands (Division of St. Croix). (Docket Entry Nos. 33–36; Pl.'s Ex B and B1; Def.'s Ex. E.) Defendant also served subpoenas on the law clerks of these Judges. Additionally, Attorney Rohn wrote to the Honorable Edward R. Becker, Chief Judge of the Third Circuit Court of Appeals, requesting he be deposed by telephone "to establish a factual record as to [Judge Moore's] statements as to articles I [Attorney Rohn] have written in the paper and the necessity of his recusing himself from all of my cases" which she intended to present .... (Def.'s Ex. G.)
*United States v. Roebuck*, 271 F.Supp.2d 712, 717 (D.Vi.2003) (Brotman, J.). The Honorable Stanley S. Brotman, Senior Judge, sitting by designation, found that "Judge Moore cannot be compelled to testify as to the facts underlying his determination to recuse himself from Attorney Rohn's cases beginning in September 2002 ..." and granted the Government's motion for a protective order and to quash the subpoenas. *Id.* at 726.

since passed, especially considering that all the issues surrounding my reappointment have been resolved. Even though it has been over a year since I was first told by the White House that the President had selected someone else to fill this position, I am still here. The White House recently informed me for the second time that I will not be reappointed, advised me that this President does not believe in reappointing sitting territorial judges,[11] and reported that the President again has selected someone else. If, as Attorney Rohn claims, I am forever biased against those who voiced their opinion against my reappointment, I should recuse myself from all cases involving the United States because of the resentment and anger some might think such shabby treatment from this President's political administration could engender. I take a different view, however. Definitely knowing that one is not going to be reappointed is just as effective a guarantee of judicial independence, though clearly not as satisfying or permanent, as the guarantee of life-time appointment under Article III that protects district judges sitting the a State of the United States.[12] Now that the question of my reappointment finally has been resolved, I have no reason to have any favorable or unfavorable bias toward Attorney Rohn, the United States, or any other party who voiced their opinion on my reappointment, whether their opinion was positive or negative. Simply, I am now free to preside without the issue of reappointment even lurking in the back of my mind.

Again, no reasonable person familiar with all the facts would believe that Attorney Rohn's letter might reasonably question my impartiality regarding Mr. Roe-

buck or any of Attorney Rohn's other clients. *See, e.g.,* GUIDE TO JUDICIARY POLICIES & PROCEDURES, CODES OF CONDUCT FOR JUDGES & JUDICIAL EMPLOYEES, v. II, Ch. 5, § 3.6–8 ("A judge's impartiality cannot be reasonably questioned merely because an attorney opposed the judge's Senate confirmation."). To paraphrase a noted treatise on federal practice, an attorney cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against her clients. *See* 13A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3542, *at* 577–78 (2d ed. 1984) ("A party cannot force disqualification by attacking the judge and then claiming that these attacks must have caused the judge to be biased against him . . . ."). The Court of Appeals for the Tenth Circuit similarly has noted that

> the mere fact that a defendant has made derogatory remarks about a judge is insufficient to convince a sane and reasonable mind that the attacked judge is biased or prejudiced. The same is true regarding an objective person, knowing all the facts, assessing whether the judge's impartiality may *reasonably* be questioned. Any other conclusion would allow defendants to cause the recusal of judges simply by making scurrilous and disparaging remarks or charges about them. Permitting parties to manipulate the system with falsehoods or insults in such a manner would be a bizarre application of 455(a) . . . .

*United States v. Cooley,* 1 F.3d 985, 994 n. 5 (10th Cir.1993) (emphasis in original; citations and internal quotations omitted).

---

11. No other President, Democrat or Republican, has ever refused to reappoint a sitting district judge in the Virgin Islands who was willing and able to serve another term.

12. *See* U.S. CONST. art III., § 1 (providing for appointment during good behavior); *see also supra* footnote 3.

I believe that Lee Rohn's problem with me has nothing to do with a concern that her clients do not receive fair and impartial treatment before me. Rather, I am convinced that it stems from my insistence that Attorney Rohn follow the rules, as well as from my order sanctioning her for using gutter language in depositions. *Saldana v. Kmart Corp.*, 84 F.Supp.2d 629 (D.Vi.1999). A deposition is an integral part of the judicial process in which a witness is compelled to appear to answer questions posed by attorneys from all parties under oath before a court reporter. Even though no judge is present, the attorneys taking the deposition are required to conduct themselves professionally as officers of the court and as if a judge were presiding. The Court of Appeals disagreed, finding that the repeated use of the word "fuck" in a deposition before a witness who was compelled under penalty of law to be there "did not rise to the level necessary to trigger sanctions" and vacated the very mild sanction I had imposed. *See Saldana v. Kmart Corp.*, 260 F.3d 228 (3d Cir.2001).

 In sum, I do not believe that an attorney should be allowed to use her calculated personal attack on a sitting judge as a technique to prevent that judge from presiding over her cases.

A judge is not required to recuse simply because a party, or an attorney for a party, personally attacked the judge in other proceedings. *E.g., United States v. Olander*, 584 F.2d 876, 887 (9th Cir. 1978) (defendant had been leader in efforts to impeach the judge, including newspaper and television appearances; motion to disqualify denied, and affirmed on appeal), *vacated on other grounds*, 443 U.S. 914, 99 S.Ct. 3104, 3105, 61 L.Ed.2d 878 (1979). "Prior written attacks upon a judge are likewise legally insufficient to support a charge of bias or prejudice on the part

of a judge toward the author." *United States v. Bray*, 546 F.2d 851, 858 (10th Cir.1976).

*United States v. Marshall*, 77 F.Supp.2d 764, 768 (N.D.Tex.1999). Because there is no evidence or reasonable inference in this case that I am unable to provide Mr. Roebuck with a fair and impartial trial, I will deny the motion to recuse.

## APPENDIX

Dear Source,

I read your editorial on Judge [Thomas K.] Moore (see "Politics appears to rule over performance"), and it is so inaccurate I have to respond.

The failure of Judge Tom Moore to be recommended for reappointment has much less to do with politics and more to do with the allegations of inappropriate behavior while he was on the bench.

First of all, the supposedly "very favorable recommendation" from the bar was anything but that. Of the over 450 bar members, less then 25 percent even bothered to return the questionnaires. Many in the bar, despite the poll being the second attempt to poll the members, still did not receive questionnaires. Of those who did, many were afraid to send them in, fearing retribution from Judge Moore. Further, the V.I. Bar Association, unfortunately, has lost touch with the attorneys. It rarely can obtain a quorum to do business, and the last meeting on St. Croix was attended by less then 15 attorneys.

Secondly, Judge Moore's problems lie in the allegations of inappropriate behavior while he was on the bench. These include, but are not limited to, repeatedly being reversed by the Third Circuit [Court of Appeals], repeated disagreements with the judges of the Third Circuit, rude behavior toward attorneys practicing before him, including, but not limited to, refusing to

grant a trial continuance to a seven months pregnant attorney despite a medical necessity; ordering attorneys to be in his court despite the fact that they were also supposed to be before the Third Circuit at the same time; complaints by jurors that they were coerced and harassed and subjected to ex parte instructions and conversations by Judge Moore while in jury deliberations; jurors complaints of being castigated after reaching a verdict because it was contrary to what Judge Moore would have decided; keeping the court house open late to accommodate the filing of a petition to keep poor housing out of a neighborhood that Judge Moore lived in, and then granting the motion despite a conflict that required recusal; repeatedly imposing sanctions without notice and a proper ability to respond; [and] being vindictive against litigants who took a position contrary to his.

I have been actively involved in the reappointment issue. I can assure you that the opposition to Judge Moore's reappointment is not limited to Holland Redfield. As a St. Thomas attorney expressed to me, I wouldn't be so against him if he did not get such perverse pleasure at sentencing young Virgin Islanders—"It is like watching him pull the wings off a fly."

The movement not to reappoint Judge Moore is far broader than just Holland Redfield and cuts across policitical [sic] lines and is widespread in the Virgin Islands bar. There is a consensus that he does not have the judicial temperament needed for the position.

Lee J. Rohn, attorney St. Croix

### ORDER

For the reasons set forth in the above Memorandum of even date, it is hereby

**ORDERED** that the defendant's motion for judicial recusal is **DENIED**.