

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-24-2004

# Selkridge v. United Omaha Life

Precedential or Non-Precedential: Precedential

Docket No. 03-1146

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Selkridge v. United Omaha Life" (2004). *2004 Decisions.* Paper 942.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/942

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES
COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 03-1146 and 03-1147

_____

MARGARITA SELKRIDGE
Appellant

v.

UNITED OF OMAHA LIFE
INSURANCE COMPANY

_____

On Appeal From the District Court
of the Virgin Islands
(D.C. Civil Action No. 01-cv-00143)
District Judge:  Hon. Thomas K. Moore

_____

Argued December 8, 2003

BEFORE:  NYGAARD, BECKER and
STAPLETON, Circuit Judges

(Opinion Filed February 24, 2004)

_____

Lee J. Rohn
K. Glenda Cameron (Argued)
1101 King Street, Suite 2
Christiansted, St. Croix, USVI  00820
  and

Terry M. Halpern
Suite 314
9003 Havensight Mall
Charlotte Amalie, St. Thomas, USVI
00802
        Attorneys for Appellant

Charles E. Engeman
Simone R.D. Francis (Argued)
Ogletree, Deakins, Nash, Smoak &
Stewart
1336 Beltjen Road, Suite 202
Charlotte Amalie, St. Thomas, USVI
00802
        Attorneys for Appellee

_____

OPINION OF THE COURT

_____

STAPLETON, Circuit Judge:

   Margarita Selkridge ("Selkridge") filed
a lawsuit against United of Omaha Life
Insurance Company ("Omaha") on several
state-law theories alleging that she had
been wrongfully denied benefits under her
disability plan. ("*Selkridge I.*")  After the
District Court granted summary judgment
on all of those theories in favor of the sole
defendant, Selkridge chose not to appeal
that decision.  Instead, she filed a new
lawsuit that asserted a claim "arising
under" the Employee Retirement Income
Security Act ("ERISA") for the wrongful
denial of benefits. ("*Selkridge II.*")  The
District Court granted summary judgment
on *res judicata* grounds.  Selkridge also
eventually filed a Fed. R. Civ. P. 60(b)

motion seeking to amend the judgment in *Selkridge I* to indicate that the grant of summary judgment was without prejudice to filing a new lawsuit. The District Court denied the Rule 60(b) motion because it sought to utilize that Rule as a substitute for an appeal.

Selkridge appeals the grant of summary judgment and the denial of her Rule 60(b) motion in *Selkridge I* and the grant of summary judgment in *Selkridge II*. We determine that we are without jurisdiction to hear an appeal of the grant of summary judgment in *Selkridge I* because an appeal was not timely taken. While we conclude that Judge Moore should have recused himself before entering the order granting summary judgment in *Selkridge II* and the order denying Selkridge's Rule 60(b) motion in *Selkridge I*, we hold that our recognition of his failure to do so as plain error and our independent, plenary review of those orders make further remedial action unnecessary. Accordingly, given that our independent plenary review convinces us that the results reached were required as a matter of law, we will affirm both December 23, 2002, orders.

## I. *Background*

Selkridge was enrolled in a group insurance plan with Omaha during the period in which she was employed by the Virgin Islands Telephone Company and its successors. In December 1996, Selkridge filed an application for long-term disability benefits with Omaha. Omaha denied the claim initially and, following an appeal,

Selkridge then filed *Selkridge I*, a diversity action in the District Court of the Virgin Islands against Omaha alleging breach of contract, bad faith, fraud, intentional infliction of emotional distress, and negligent infliction of emotional distress.

Omaha moved for summary judgment on all claims Selkridge had alleged against it. The motion contended that all of Selkridge's claims arose "under the common law of the Territory" and were therefore "expressly preempted by ERISA." JA at 61.

In her opposition to Omaha's motion, Selkridge argued that summary judgment should be denied but went on to make the following request: "[i]f this Court were to find that the claims are preempted and must be converted to federal claims, Plaintiff respectfully requests that she be given the opportunity to amend her Complaint accordingly to more clearly state her claims as federal violation of ERISA claims." JA at 156-57.

The District Court held that all of Selkridge's claims were preempted by ERISA and that Omaha was entitled to summary judgment on all counts. *See Selkridge v. United of Omaha Life Ins. Co.*, 221 F. Supp. 2d 579 (D.V.I. 2002). It did not mention the application for leave to amend found only in Selkridge's brief. The Court's February 22, 2002, order read: "it is hereby ORDERED that defendants' motion for summary judgment . . . is GRANTED. . . ." JA at 364. The order did not expressly reserve to

Selkridge a right to pursue ERISA-based claims in a new action.

On April 23, 2002, Selkridge filed a new action, *Selkridge II*, in the District Court. The complaint asserted that Selkridge's claim "arises under ERISA." JA at 390.

Omaha moved for summary judgment in *Selkridge II* on September 23, 2002, arguing that Selkridge's claim "under ERISA" was barred by *res judicata* because it arose out of the same set of circumstances at issue in *Selkridge I* and could have been litigated in *Selkridge I*. On October 30, 2002, eight months after the order granting summary judgment in *Selkridge I*, Selkridge filed a Fed. R. Civ. P. 60(b) motion in *Selkridge I*. That motion requested that the District Court "clarify" its February 22, 2002, order to state that Selkridge's claims in *Selkridge I* were "converted to federal claims" and to grant Selkridge "leave to amend to plead claims under ERISA" with respect to *Selkridge I*. JA at 719, 726.

On December 23, 2002, the District Court granted summary judgment in *Selkridge II* on *res judicata* grounds and denied the Rule 60(b) motion in *Selkridge I* on the ground that it was an impermissible attempt to utilize that Rule as a substitute for an appeal. *See Selkridge v. United of Omaha Life Ins. Co.*, 237 F. Supp. 2d 600 (D.V.I. 2002).

Just before the summary judgment motion in *Selkridge II* and the Rule 60(b) motion in *Selkridge I* were filed, one of Selkridge's attorneys wrote a letter-to-the-editor of an on-line publication critical of the District Judge presiding over the *Selkridge* matters. The content of the letter was not directly related to either *Selkridge* matter, but the letter prompted a series of events that will be discussed in Part III of this opinion relating to the propriety of the District Judge's continuing to preside over the *Selkridge* matters.

On January 9, 2003, Selkridge filed a notice of appeal in *Selkridge I* seeking to appeal the February 22, 2002, grant of summary judgment in *Selkridge I*, the December 23, 2002, denial of her Rule 60(b) motion, and "the Court's recusal of itself from this case and its subsequent reinstatement, *sua sponte*." SA. On the same day, Selkridge filed a notice of appeal seeking to appeal the December 23, 2002, grant of summary judgment in *Selkridge II*.[1]

---

[1] These notices of appeal were not included in the appendix filed by Selkridge. Instead, the appendix included two additional notices of appeal for *Selkridge I* and *Selkridge II*, both of which were filed on January 13, 2003. The January 13, 2003, notice of appeal for *Selkridge I* was the same as the January 9, 2003, notice of appeal for *Selkridge I*. The January 13, 2003, notice of appeal for *Selkridge II*, however, differed from the January 9, 2003, notice of appeal for *Selkridge II*, and failed to specify any order being appealed from in *Selkridge II*.

II. *Jurisdiction to Hear an Appeal from the Grant of Summary Judgment in* Selkridge I

Selkridge insists that we have jurisdiction to review the summary judgment order entered in *Selkridge I* under 28 U.S.C. § 1291, which authorizes appeals from final decisions of the District Court. We cannot agree.

Selkridge has made a motion to correct the appendix with respect to the fact that the January 9, 2003, notices of appeal were not included in the appendix. Under Fed. R. App. P. 30(a)(2), "[p]arts of the record may be relied on by the court or the parties even though not included in the appendix." While we need not necessarily correct the appendix, Selkridge's motion is unopposed and we will, by separate order, grant the motion.

Selkridge concedes that the January 13, 2003, notice of appeal in *Selkridge II* "does not correctly identify the District Court Order from which an appeal was taken in that case." Motion at 3. We will consider the January 13, 2003, *Selkridge II* notice of appeal as one merely expanding that which Selkridge sought to appeal in *Selkridge II*–and not one intended as a substitute for the earlier notice of appeal–because it provides no indication that it was intended to change the content of the earlier notice of appeal. Therefore, as construed by this Court, Selkridge's notices of appeal in *Selkridge II* seek to appeal the December 23, 2002, order granting summary judgment to Omaha.

"A final order is one that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Welch v. Folsom*, 925 F.2d 666, 668 (3d Cir. 1991) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (internal quotations omitted)). For purposes of appeal under 28 U.S.C. § 1291, "A summary judgment that fully disposes of all claims among all parties is final." 15B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc.: Juris. 2d § 3914.28 (2d ed. 1992), at 202; *see Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 111 (3d Cir. 1996) ("The district court granted summary judgment for the defendants as to all counts of plaintiffs' complaint. . . . The district court's grant of summary judgment is a final order that disposed of all claims, and this court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291."). The District Court's February 22, 2002, order granted summary judgment in favor of Omaha on all of Selkridge's claims on the grounds that the claims were expressly preempted by ERISA. Because it disposed of all claims with respect to all parties,[2] that order was a final order within

---

[2] That order also met the procedural requirements of Fed. R. Civ. P. 58 for an order that commences the running of the time for appeal. *See Local Union No. 1992 of the Int'l Brotherhood of Electrical Workers v. The Okonite Co.*, ___ F.3d ___, 2004 WL 113150, *5 (3d Cir. 2004) (order satisfies Rule 58's separate document requirement where it (1) is self-contained

the meaning of 28 U.S.C. § 1291.

Fed. R. App. P. 4(a)(1)(A) requires that a notice of appeal be filed "with the district clerk within 30 days after the judgment or order appealed from is entered," *id.*, unless certain exceptions inapplicable here apply. Selkridge filed her notice of appeal in *Selkridge I* on January 9, 2003–over ten months after summary judgment had been granted in that matter. It is a well-established rule that "[t]he time limits for filing a notice of appeal are 'mandatory and jurisdictional.'" *In re Rashid*, 210 F.3d 201, 204 (3d Cir. 2000) (quoting *Krebs Chrysler-Plymouth, Inc. v. Valley Motors, Inc.*, 141 F.3d 490, 495 (3d Cir. 1998)); *see, e.g.*, *Browder v. Director, Dept. of Corrections of Illinois*, 434 U.S. 257, 264 (1978) (same)*; U.S. v. Vastola*, 989 F.2d 1318, 1321 (3d Cir. 1993) (same). We thus lack jurisdiction to review the summary judgment in *Selkridge I*.

Selkridge first argues that she "did not seek reconsideration or appeal the district court's decision because she reasonably believed that the district court had overlooked her request for automatic conversion of [plaintiff's] claims and leave to amend. . . ." Appellant's Reply Brief at 8-9 (footnote omitted). We are unpersuaded. If Selkridge's counsel

---

and separate from the opinion, (2) sets forth the relief granted, and (3) omits the District Court's reasons for disposing of the parties' motions as it did).

thought that the District Court had "overlooked" her request for automatic conversion of her state law claims into ERISA claims, and had also "overlooked" Selkridge's request for leave to amend, we fail to understand how this would excuse counsel from seeking reconsideration by the District Court or appealing the District Court's decision.

Alternatively, Selkridge argues that her counsel reasonably viewed the February 22, 2002, order as a partial summary judgment and, accordingly, not as a final order. While it is true that a grant of "partial summary judgment" under Fed. R. Civ. P. 56(d) is not a "final" judgment within the meaning of 28 U.S.C. § 1291 because it is an adjudication of less than the entire action, *see* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc.: Civil 3d § 2737 (1998), at 322-25, there is simply no record basis for construing the February 22, 2002, order as a grant of partial summary judgment. Omaha moved for summary judgment on all claims on the grounds that the claims were expressly preempted by ERISA. Although Omaha requested that, in the alternative, it be granted partial summary judgment on Selkridge's state law claims should "Count I [be] deemed to constitute a claim for benefits under ERISA," JA at 48, the February 22, 2002, order in explicit terms grants summary judgment on all claims.[3]

---

[3] We also reject Selkridge's argument that the filing of her Fed. R. Civ. P. 60(b)

We thus conclude that we lack jurisdiction to review the District Court's

---

motion and her subsequent timely appeal of the denial of that motion entitles her to a review of the underlying grant of summary judgment on February 22, 2002. Fed. R. App. P. 4(a)(4)(A) provides a limited exception to the time limits for filing a notice of appeal outlined in Fed R. App. P. 4(a)(1)(A).

> If a party timely files in the district court any of the following motions under the Federal Rules of Civil Procedure, the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: . . . (vi) for relief under Rule 60 if the motion is filed no later than 10 days after the judgment is entered.

*Id.* This provision of Fed. R. App. P. 4(a)(4)(A), clarifying the relationship between the time limits for filing a Fed. R. Civ. P. 60 motion and an appeal under Fed. R. App. P. 4, makes clear the limited circumstances under which an appeal from a Fed. R. Civ. P. 60(b) motion may address the underlying judgment. *See United States v. Fiorelli*, 337 F.3d 282, 288 n.3 (3d Cir. 2003). Selkridge filed her Rule 60(b) motion eight months after summary judgment was entered on February 22, 2002. That motion did not toll the time for appeal of that order because it was not filed within ten days after summary judgment was entered.

February 22, 2002, order in *Selkridge I*.

## III. *Summary Judgment in* Selkridge II *and the Rule 60(b) Motion in* Selkridge I: *The Recusal Issue*

Selkridge insists that the summary judgment order in *Selkridge II* and the refusal to vacate the judgment in *Selkridge I* must be vacated because Judge Moore's impartiality when he rendered those decisions would be questioned by a reasonable person aware of the relevant facts.

### A. Background

On September 3, 2002, Lee J. Rohn, one of Selkridge's attorneys, wrote a letter-to-the-editor of an online publication, the *St. Croix Source*, regarding United States District Judge Thomas K. Moore's performance of his official duties and the fact that Judge Moore was not being reappointed[4] by President George W. Bush.[5] Attorney

---

[4] Judges sitting in the District Court of the Virgin Islands are appointed for 10-year terms pursuant to the Revised Organic Act of 1954. *See* 48 U.S.C. 1614(a).

[5] We take judicial notice of the existence of a letter-to-the-editor by Attorney Rohn published in the *St. Croix Source*. *See, e.g.*, *Ieradi v. Mylan Laboratories, Inc.*, 230 F.3d 594, 598 n.2 (3d Cir. 2000) (appellate court may take judicial notice of the existence of a newspaper article); *Peters v. Delaware*

6

Rohn suggested that "[t]he failure of Judge Tom Moore to be recommended for reappointment has much less to do with politics and more to do with the allegations of inappropriate behavior while he was on the bench." *See* Lee J. Rohn*, Lawyer: Judge's Non-Reappointment Not Politics*, St. Croix Source (Sept. 3, 2002).[6] Attorney Rohn then listed in a cursory fashion several allegations of "inappropriate behavior" by Judge Moore.[7]

*River Port Authority of Pennsylvania and New Jersey*, 16 F.3d 1346, 1356 n.12 (3d Cir. 1994) (same).

[6] The full text of the letter can be found in *United States v. Roebuck*, 289 F. Supp. 2d 678, 684-85 (D.V.I. 2003) (appendix).

[7] Wrote Attorney Rohn:
Judge Moore's problems lie in the allegations of inappropriate behavior while he was on the bench. These include, but are not limited to, repeatedly being reversed by the Third Circuit [Court of Appeals], repeated disagreements with the judges of the Third Circuit, rude behavior toward attorneys practicing before him, including, but not limited to, refusing to grant a trial continuance to a seven months pregnant attorney despite a medical necessity; ordering attorneys to be in his court despite the fact that they were also supposed to be before the Third Circuit at the same time; complaints by jurors that they

On September 9, 2002, Judge Moore began issuing *sua sponte* recusal orders in numerous cases involving Attorney Rohn.[8] A total of 19 recusal orders were issued between September 9, 2002, and October 7, 2002, in Judge Moore cases involving

were coerced and harassed and subjected to ex parte instructions and conversations by Judge Moore while in jury deliberations; jurors complaints of being castigated after reaching a verdict because it was contrary to what Judge Moore would have decided; keeping the court house open late to accommodate the filing of a petition to keep poor housing out of a neighborhood that Judge Moore lived in, and then granting the motion despite a conflict that required recusal; repeatedly imposing sanctions without notice and a proper ability to respond; [and] being vindictive against litigants who took a position contrary to his.
*Id.* (alterations in original).

[8] We take judicial notice of the existence of the judicial orders set forth *infra* in which Judge Moore recused himself from a large number of Attorney Rohn's cases, and in which Judge Brotman indicated that nearly all of Attorney Rohn's cases were being reassigned to him for "mediation and/or settlement discussions."

Attorney Rohn.[9]

Virtually all of these cases were then reassigned to Judge Brotman for purposes of mediation and settlement negotiations.[10]

---

[9] *See Antonie, et al. v. VI Port Authority, et al.*, V.I. Civ. No. 2001-63 (recusal order dated Sept. 9, 2002); *Bolinger v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 2002-49 (recusal order dated Sept. 9, 2002); *Gore, et al. v. Prosser, et al.*, V.I. Civ. No. 2001-003 (recusal order dated Sept. 9, 2002); *Hendricks v. Belardo*, V.I. Civ. No. 1999-033 (recusal order dated Sept. 9, 2002); *Jones v. Daily News Publishing Co.*, et al., V.I. Civ. No. 1999-138 (recusal order dated Sept. 9, 2002); *Lang v. United States*, V.I. Civ. No. 2000-100 (recusal order dated Sept. 9, 2002); *Matheson v. Virgin Islands Community Bank, et al.*, V.I. Civ. No. 2000-80 (recusal order dated Sept. 9, 2002); *Nyfield v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 2001-53 (Sept. 9, 2002); *Sweeney v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 2001-53 (recusal order dated Sept. 9, 2002); *Williams v. Kmart Corp.*, V.I. Civ. No. 1999-102 (recusal order dated Sept. 9, 2002); *Chaparro v. Innovative Communications Corp.*, V.I. Civ. No. 1999-190 (recusal order dated Sept. 10, 2002); *Island Management Group v. Bank of Nova Scotia, et al.*, V.I. Civ. No. 1999-104 (recusal order dated Sept. 10, 2002); *Martin v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 1999-202 (recusal order dated Sept. 10, 2002); *Trantham v. Ford, et al.*, V.I. Civ. No. 1998-140 (recusal order dated Sept. 10, 2002); *VECC, et al. v. The Bank of Nova Scotia*, V.I. Civ. No. 2002-72 (recusal order dated

Sept. 10, 2002); *Souder v. Withers*, Civ No. 2000-91 (recusal order dated Sept. 20, 2002); *Anderson v. Government of the Virgin Islands, et al.*, V.I. Civ. No. 2001-149 (recusal order dated Sept. 26, 2002); *Airo v. Sugar Bay Club, et al.*, V.I. Civ. No. 2000-134 (recusal order dated Oct. 1, 2002); *Derr v. BCM/CHI Frenchmen's Reef, Inc.*, V.I. Civ. No. 2001-148 (recusal order dated Oct. 7, 2002).

[10] *See Antonie, et al. v. VI Port Authority, et al.*, V.I. Civ. No. 2001-63 (reassignment notice dated Dec. 3, 2002); *Bolinger v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 2002-49 (reassignment notice dated Dec. 3, 2002); *Gore, et al. v. Prosser, et al.*, V.I. Civ. No. 2001-003 (reassignment notice dated Dec. 3, 2002); *Jones v. Daily News Publishing Co.*, et al., V.I. Civ. No. 1999-138 (reassignment notice dated Dec. 3, 2002); *Lang v. United States*, V.I. Civ. No. 2000-100 (reassignment notice dated Dec. 3, 2002); *Matheson v. Virgin Islands Community Bank, et al.*, V.I. Civ. No. 2000-80 (reassignment notice dated Dec. 3, 2002); *Nyfield v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 2001-53 (reassignment notice dated Dec. 3, 2002); *Sweeney v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 2001-53 (reassignment notice dated Dec. 3, 2002); *Chaparro v. Innovative Communications Corp.*, V.I. Civ. No. 1999-190 (reassignment notice dated Dec.

In addition, at least twelve other Judge Moore cases involving Attorney Rohn were reassigned to Judge Brotman for settlement purposes[11] although no *sua sponte* recusal orders were issued by Judge Moore in these cases.[12] It is in this last

3, 2002); *Airo v. Sugar Bay Club, et al.*, V.I. Civ. No. 2000-134 (reassignment notice dated Dec. 5, 2002); *Anderson v. Government of the Virgin Islands, et al.*, V.I. Civ. No. 2001-149 (reassignment notice dated Dec. 5, 2002); *Derr v. BCM/CHI Frenchmen's Reef, Inc.*, V.I. Civ. No. 2001-148 (reassignment notice dated Dec. 5, 2002); *VECC, et al. v. The Bank of Nova Scotia*, V.I. Civ. No. 2002-72 (reassignment notice dated Dec. 5, 2002); *Martin v. Virgin Islands Telephone Corp., et al.*, V.I. Civ. No. 1999-202 (reassignment notice dated Dec. 12, 2002); *Souder v. Withers*, Civ. No. 2000-91 (reassignment notice dated Dec. 20, 2002); *see also Trantham v. Ford, et al.*, V.I. Civ. No. 1998-140 (order from Magistrate Judge Jeffrey L. Resnick dated Dec. 4, 2002, directing the parties to discuss settlement with Judge Brotman).

[11] *See Donastorg, Jr. v. Innovative Communications Corp.*, V.I. Civ. No. 2002-97 (reassignment notice dated Dec. 3, 2002); *Dabrowski v. Emerald Beach Corp.*, V.I. Civ. No. 2001-121 (reassignment notice dated Dec. 5, 2002); *Greene v. Honda Motor Co., Ltd.*, et al., V.I. Civ. No. 2002-159 (reassignment notice dated Dec. 5, 2002); *Konikoff v. Peninsular and Oriental Steam Navigation Co., et al.*, V.I. Civ. No. 1999-224 (reassignment notice dated Dec. 5, 2002); *Mahoney v. Bulhof, et al.*, V.I. Civ. No.

2001-154 (reassignment notice dated Dec. 5, 2002); *Selkridge v. United Omaha Life Ins. Co.*, V.I. Civ. No. 2002-73 (reassignment notice dated Dec. 5, 2002); *Sexton, et al. v. Equivest St. Thomas, et al.*, V.I. Civ. No. 2002-96 (reassignment notice dated Dec. 5, 2002); *Collins v. Castle Acquisitions*, V.I. Civ. No. 99-212 (reassignment notice dated Dec. 20, 2002); *Domino Oil v. Phoenix Assurance Co. of New York*, V.I. Civ. No. 1996-99 (reassignment notice dated Dec. 20, 2002); *Soltau v. CTF St. Thomas Corp.*, V.I. Civ. No. 1998-143 (reassignment notice dated Dec. 20, 2002); *Smith v. Elias, et al.*, V.I. Civ. No. 02-14 (scheduling order for a status hearing and settlement discussions dated Dec. 23, 2002); *Khan v. Soleiman, et al.*, V.I. Civ. No. 2000-223 (reassignment notice dated Jan. 14, 2003).

[12] Selkridge included in her appendix an "Affidavit of Lee J. Rohn in Support of Motion for Judicial Recusal." SA at 31-33. According to the Affidavit:

> Magistrate Judge Barnard said that Judge Moore was upset with me for having written the letter criticizing his judicial performance and temperament. Magistrate Judge Barnard further stated that he had been instructed Judge Barnard [sic] to prepare recusal Orders for every case in which I was attorney of record.

SA at 32. The affidavit does not make clear as to who instructed Magistrate

group of matters, where no recusal order by Judge Moore had been issued but the case had nonetheless been reassigned to Judge Brotman for settlement negotiations, that *Selkridge II* landed.[13]

Selkridge was notified on December 9, 2002, by Judge Brotman that her matter had been reassigned to Judge Brotman for settlement negotiations.[14] In an order dated December 23, 2002, and filed on December 27, 2002, Judge Brotman scheduled a conference for a "status hearing and settlement discussions" for *Selkridge II*. JA at 764. Apparently unbeknownst to Judge Brotman, by way of a memorandum opinion and orders dated December 20, 2002, and filed on

December 23, 2002, Judge Moore had already granted summary judgment in *Selkridge II* on all claims in favor of Omaha, and had denied Selkridge's Rule 60(b) motion in *Selkridge I*.

Also on December 23, 2002, Magistrate Judge Geoffrey W. Barnard wrote to Judge Brotman by letter, a copy of which was sent to the parties. The letter read, in part: "This is to confirm our discussion earlier regarding the above-referenced cases. These cases were inadvertently categorized as cases from which Judge Moore recused himself. However, Judge Moore has confirmed that he will continue to preside over these cases." JA at 766. Judge Brotman then notified the parties that his previous scheduling order was vacated, in light of Judge Moore's December 20, 2002, opinion.

Two published opinions from the District Court of the Virgin Islands, written after the orders being appealed from in this case were filed, purport to address Judge Moore's recusals (or withholding of recusals) with respect to Attorney Rohn's cases. *See United States v. Roebuck*, 271 F. Supp. 2d 712 (D.V.I. 2003); *United States v. Roebuck*, 289 F. Supp. 2d 678 (D.V.I. 2003).[15]

---

Judge Barnard to prepare recusal orders in all of Attorney Rohn's cases. In any case, we cannot consider the affidavit, which purports to have been prepared for the *United States v. Roebuck*, V.I. Crim. No. 02-171 case. The affidavit is outside of the record for *Selkridge I* and *Selkridge II*, and Selkridge suggests no theory under which we may consider the affidavit.

[13] Neither a recusal order nor a reassignment notice was issued with respect to *Selkridge I*. The case was not reassigned for settlement purposes because final judgment had been entered and only a Fed. R. Civ. P. 60(b) motion was pending.

[14] *See Selkridge v. United Omaha Life Ins. Co.*, V.I. Civ. No. 2002-73 (reassignment notice dated Dec. 5, 2002).

[15] "[W]e recognize that we have the power to take judicial notice of subsequent developments in related proceedings since the appeal in each case was filed." *Federal Ins. Co. v. Richard I. Rubin & Co., Inc.*, 12 F.3d 1270, 1284 (3d Cir.

1993). We take judicial notice of these published opinions to the extent that they discuss *Selkridge I* and *Selkridge II*, and to the extent they discuss whether Judge Moore recused himself from Attorney Rohn's cases. With respect to *United States v. Roebuck*, 289 F. Supp. 2d 678 (D.V.I. 2003) (Moore, J.), we take judicial notice of the public statements made by Judge Moore in that opinion.

We recognize that "[a] court may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute" and "[a] judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001).

With respect to both published *Roebuck* opinions, we do not take judicial notice for "the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999). For example, to the extent Judge Moore expressed that he was "initially upset at the viciousness of the letter [by Attorney Rohn]," *Roebuck*, 289 F. Supp. 2d at 682, we do not purport to be taking judicial notice of the fact that Judge Moore was actually upset at Attorney Rohn. We take judicial notice for the more limited purpose of recognizing that Judge Moore made a

In *United States v. Roebuck*, 271 F. Supp. 2d 712 (D.V.I. 2003), Judge Brotman, presiding over a motion to quash subpoenas to compel the testimony of four federal judges at an evidentiary hearing on a motion to recuse Judge Moore from presiding over that case, noted that:

Shortly after Judge Moore had recused himself from all of Attorney Rohn's cases, he withdrew his recusal in some cases, including the matters of *Selkridge v. United of Omaha Life Insurance Company*, V.I. Civil Action Nos. 2001-143 and 2002-73, without giving a reason for this decision. (*See Selkridge v. United of Omaha Life Ins. Co.*, 237 F. Supp. 2d 600 (D.V.I. Dec. 20, 2002) (Moore, J.)).

*Id.* at 715. Thus, there is a published opinion of the District Court representing that Judge Moore recused himself in *Selkridge I* and *Selkridge II,* and then "withdrew" that recusal.

Judge Moore, in later proceedings in *Roebuck*, indicated that he "never recused [himself] from *Selkridge*" and commented on his reason for recusing himself in many of Attorney Rohn's cases:

First, I entered no blanket order of recusal from all of Lee Rohn's cases

---

public statement indicating that he was "initially upset at the viciousness" of Attorney Rohn's letter.

11

. . . . Second, I entered recusal orders in only some, but not all, of Attorney Rohn's then-pending cases. Third, I have not made any rulings in any of those cases from which I have recused myself. The *Selkridge* matter is one of those in which I have never entered an order of recusal. Thus, Attorney Rohn's claim that I deliberately "unrecused" myself just to be able to rule against her client is patently false. Although the magistrate judge inadvertently included *Selkridge* among those cases sent to the judge who had been designated to oversee the Rohn recusal cases for settlement negotiations, the fact remains that I never recused myself from *Selkridge*. I ruled on the facts and law that I believe governed the decision of the case. I understand my rulings are on appeal, and, as always, the Court of Appeals will have the last word if it disagrees with my decision.

I did recuse myself from *some* of Attorney Rohn's then-pending cases because her personal attack in the *St. Thomas Source* stung when I first read it. I reiterate that these recusal orders had absolutely nothing to do with any antipathy or prejudice against any of her clients or any concern that I could not be fair and impartial in handling their cases. Several months have now gone by and although I was initially upset at the viciousness of the letter, the passage of time has allowed me to reflect, and, as the saying goes, time heals all wounds. I have concluded that this was just Lee Rohn being Lee Rohn and doing what Lee Rohn thinks she must do to win.

*United States v. Roebuck*, 289 F. Supp. 2d 678, 681-82 (D.V.I. 2003) (footnotes omitted). Thus, while Judge Moore characterized the group of cases referred to Judge Brotman as the "Rohn recusal cases," there were some of these cases, including *Selkridge II*, in which Judge Moore maintains that he did not recuse himself.

## B. Standard of Review

Where a motion for disqualification was made in the District Court, we review the denial of such a motion for abuse of discretion. *See, e.g., General Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 336 n.25 (3d Cir. 2001); *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000). However, Selkridge made no motion in the District Court for Judge Moore's recusal from *Selkridge I* or *Selkridge II* at any time after the events at issue here took place.

Where a party has not requested that the district judge recuse himself or herself during proceedings in the district court, we review a recusal argument made on appeal

for plain error.[16] *See, e.g., Osei-Afriyie by Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 881 (3d Cir. 1991); *United States v. Dalfonso*, 707 F.2d 757, 760 (3d Cir. 1983); *United States v. Schreiber*, 599 F.2d 534, 535 (3d Cir. 1979).[17]

---

[16] We recognize that the Second Circuit has, in the civil context, reviewed a party's argument made for the first time on appeal–that the trial judge should have recused himself or herself–under fundamental error analysis. *See Taylor v. Vermont Dept. of Educ.*, 313 F.3d 768, 795 (2d Cir. 2002) ("In the civil context, however, we reverse only if there has been fundamental error. Fundamental error is more egregious than the plain error that can excuse a procedural default in a criminal trial, and is so serious and flagrant that it goes to the very integrity of the proceeding.") (internal quotations, citations, and alterations omitted). As Fed. R. Crim. P. 52(b), upon which plain error analysis is based, does not apply in the civil setting, *Taylor* suggests that fundamental error analysis should be applied. Nonetheless, this Court has applied plain error analysis, in the civil context, to a party's argument for the first time on appeal that the trial judge should have recused himself or herself. *See Osei-Afriyie by Osei-Afriyie v. Medical College of Pennsylvania*, 937 F.2d 876, 881 (3d Cir. 1991). Accordingly, we are bound to apply plain error analysis.

[17] Selkridge maintains that her counsel had no fair opportunity to move for recusal in the District Court. Counsel was aware that Judge Moore had recused himself in 19 of her cases and that he had transferred these cases and another group of cases in which no recusal orders had been issued to Judge Brotman for settlement discussions. Counsel may well have expected Judge Moore to recuse in this other group of cases (as he had done with the other 19 cases) if they did not settle. Moreover, based on Judge Brotman's December 9th order, counsel may well have anticipated that, at a minimum, Judge Moore would take no further action in these cases unless and until settlement discussions proved unfruitful. Judge Moore's December 23rd final judgment, accordingly, may have come as a surprise. Finally, when the final judgment was received, it was apparent from the surrounding circumstances that Judge Moore must have considered the recusal issue. At that point, counsel may well have considered a motion in the District Court to be pointless. An argument in favor of applying an abuse of discretion standard of review has some appeal in this context. *See United States v. Antar*, 53 F.3d 568, 573 n.6 (3d Cir. 1995) (expressing doubt as to whether the plain error standard of review applies where statement at issue was made by district judge *after* conviction, and counsel may have reasonably thought that making a recusal motion was pointless; nonetheless, plain error standard of review applied

Under the plain error standard of review, a District Court's order may be reversed only when "[t]here [was] an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *Antar*, 53 F.3d at 573 (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alterations in original). Normally, the requirement that the error "affect substantial rights" is not satisfied absent an affirmative showing "that the error [was] prejudicial. It must have affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. There is at least one situation, however, in which prejudice may be presumed without affirmative evidence that the alleged error affected the outcome. As we held in *United States v. Antar*, 53 F.3d 568, 573-79 (3d Cir. 1995) (applying plain error review where a trial judge's failure to recuse was first raised on appeal), prejudice will be presumed and plain error review is appropriate where a district judge allegedly failed to recuse despite an appearance of partiality. Because "the touchstone of recusal is the integrity of the judiciary . . . prejudice is presumed" once "the appearance of partiality is shown." *Id.* at 573 n.7.

Even where the error is plain and affects substantial rights, the decision to "correct

the forfeited error [is] within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (second alteration in original and internal quotations omitted).

### C. The Law of Recusal

Section 455(a) of Title 28, United States Code, requires that:

> Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a); *see Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) ("Whenever a judge's impartiality 'might reasonably be questioned' in a proceeding, 28 U.S.C. § 455(a) commands the judge to disqualify himself *sua sponte* in that proceeding.").

"A party seeking recusal need not show actual bias on the part of the court, only the possibility of bias. . . . Under § 455(a), if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283, 343 (3d Cir. 1998) (internal quotations omitted); *see Massachusetts School of Law at Andover, Inc. v.*

---

where parties both conceded it would apply). Nevertheless, since it is clear that we may review for plain error and since we believe that standard is satisfied here, we proceed hereafter with plain error review.

*American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality.")

Generally, "beliefs or opinions which merit recusal must involve an extrajudicial factor." *Antar*, 53 F.3d at 574. "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

There is no dispute here that the source of Judge Moore's alleged bias involved an extrajudicial factor. The basis for Selkridge's concern that Judge Moore had become biased against her was a letter written by her counsel to a local newspaper decrying Judge Moore's performance as a judge, and Judge Moore's reactions to that letter. Accordingly, a significant extrajudicial factor is present and we review Judge Moore's lack of recusal under the objective standard of whether a "reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality" under § 455(a). *Antar*, 53 F.3d at 574 (quoting *In re Larson*, 43 F.3d 410, 415 (8th Cir. 1994) (quoting *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1111 (5th Cir. 1980))).

If it were the case that Judge Moore had recused himself in *Selkridge I* and *Selkridge II* and then unrecused himself, our task would be an easy one. "Once a judge has disqualified himself, he or she may enter no further orders in the case. His power is limited to performing ministerial duties necessary to transfer the case to another judge (including the entering of 'housekeeping' orders)." *Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir. 1988) (citations omitted). But the dockets in these cases do not reflect that such a recusal order was entered in either of them, and we will analyze the recusal issue on the assumption that there were no such recusals.[18]

## D. Section 455(a) Analysis

We agree with Omaha that the fact that one of Selkridge's attorneys wrote a letter-to-the-editor of a newspaper regarding Judge Moore is, alone, of little probative value with respect to whether a reasonable person, knowing all of the circumstances, would question Judge Moore's impartiality. As the Court of Appeals for the Second Circuit explained with regard to a letter sent by a litigant to a judge that questioned the judge's motivations and intentions, "[t]his letter may very well establish [the litigant]'s feelings toward

---

[18] As we note hereafter, this does not mean that the existence of ambiguity on the public record regarding whether recusals occurred is irrelevant to our analysis of the recusal issue.

15

[the judge], but has no tendency to show the latter's feelings toward [the litigant]. . . ." *King v. United States*, 576 F.2d 432, 437 (2d Cir. 1978); *see United States v. Wolfson*, 558 F.2d 59, 61-62 (2d Cir. 1977) (litigant's letter to newspaper (which was never published), copied to the judge, which accused the judge of participating in a "scheme to frame" the litigant, "only establish[ed] [the litigant]'s feelings towards [the judge], not the reverse"); *see also United States v. Helmsley*, 760 F. Supp. 338, 342 (S.D.N.Y. 1991) ("Where the issue is not hostility displayed *by the judge*, but hostility displayed *toward the judge*, the Second Circuit has found that hostile attacks even by a criminal defendant, much less by the defendant's lawyer, are not a sufficient basis for recusal.").

Were the rule otherwise, "those litigants fortunate enough to have easy access to the media could make charges against a judge's impartiality that would effectively veto the assignment of judges. Judge-shopping would then become an additional and potent tactical weapon in the skilled practitioner's arsenal." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988). We therefore agree with Judge Moore's view of recusal law, expressed in *United States v. Roebuck*, 289 F. Supp. 2d 678 (D.V.I. 2003), that "an attorney [may not] be allowed to use her calculated personal attack on a sitting judge as a technique to prevent that judge from presiding over any of her cases. . . ." *Id.* at 682. If the only basis for Selkridge's argument that Judge

Moore should have recused himself was the letter written by Selkridge's counsel taking issue with Judge Moore's performance, there would be little basis for arguing that he should have recused. It is his reaction to counsel's letter that raises the difficult issues here presented.

We first address the circumstances under which the December 23, 2002, orders were entered by Judge Moore. A letter written by Attorney Rohn and directly challenging the competence of Judge Moore had been published on September 3rd. Commencing six days later, and continuing over a period of a month, Judge Moore recused himself in 19 cases involving Attorney Rohn. Almost all of these cases were reassigned to Judge Brotman, a visiting judge, for settlement discussions only, presumably so that permanent reassignment would be required in only those that did not settle. These recusals and reassignments were made *sua sponte* and without explanation. In addition, prior to December 23rd, at least twelve more cases of Judge Moore's involving Attorney Rohn were transferred from Judge Moore to Judge Brotman for settlement negotiations, raising the possibility that Judge Moore was considering recusal in such of these cases as did not settle. Again, the reassignments came *sua sponte* and without explanation.

Because these extraordinary activities in Judge Moore's cases involving Attorney Rohn followed almost immediately on the heels of such a critical publication and because no alternative explanation was

16

given for them, we believe they would suggest to a reasonable person that Judge Moore was sufficiently upset by the letter that he considered himself unable to be objective in her cases. Moreover, in the absence of an alternative explanation suggesting a contrary conclusion, we believe a reasonable person would question Judge Moore's ability to be objective at that point in time in *all* of Attorney Rohn's cases.

Further, because the ultimate issue here is whether the public can have confidence in the integrity of the court's judgments, we are called to consider statements of the court following December 23, 2002, to the extent they bear upon that issue. In *United States v. Antar*, 53 F.3d 568 (3d Cir. 1995), the defendant challenged the validity of his conviction on the ground that the trial judge was biased and should not have presided over his trial. The principal basis for the charge of bias was a statement made by the judge at the conclusion of the trial. We there rejected the idea that we should look only at the appearance of matters at the time of trial:

> We reject the implications of the government's argument–that because the statement occurred after the trial, it cannot form the basis of an allegation of bias during the trial. Suppose, for instance, that at sentencing the district judge informs a defendant that throughout the trial his object had been to see the defendant behind bars. A reasonable observer in such a scenario would

have serious reason to question whether prior rulings in the case were based on impartial considerations or on the judge's stated goal. The fact that the judge's motivation came to light only after the conclusion of the trial would be of no moment.

*Antar*, 53 F.3d at 576. Based on *Antar*, we conclude that we must consider developments between December 23, 2002, and the submission of this direct appeal.

This conclusion is, of course, important because Judge Moore, after December 23, 2002, had occasion to comment on the extraordinary activity in Attorney Rohn's cases prior to that date. Writing 14 months after the publication of Rohn's letter and 11 months after December 23, 2002, Judge Moore acknowledged that he had "entered recusal orders in . . . some, but not all, of Attorney Rohn's . . . pending cases" because he was "stung" by "her personal attack" and "upset at the viciousness" of her "scurrilous article." He reported, however, that "the passage of time [had] allowed [him] to reflect, and . . . [had] heal[ed] all wounds." *Roebuck*, 289 F. Supp. 2d at 682. Judge Moore thus confirmed that he was sufficiently upset with Attorney Rohn in the Fall of 2002 that he recused in some of her cases. While he insisted that he did not recuse in all of Attorney Rohn's cases, he offered no explanation for why he believed he could be objective in some of her cases even though he could not be in others. As a

17

result, we believe that Judge Moore's opinion served to reinforce the conclusion that a reasonable person would have reached viewing matters as of December 23rd – that there was reason to "harbor doubts about the judge's impartiality" when he was deliberating over the motions pending in *Selkridge I* and *Selkridge II* and writing his December 23, 2002, opinion.

Nor is the appearance of impropriety assuaged by the conflict in the subsequently developed record over whether Judge Moore did at one point recuse in the *Selkridge* cases. We accept for present purposes that Judge Brotman was mistaken in his belief that Judge Moore had recused himself in all of Attorney Rohn's cases. Nevertheless, there is a conflict in the public record that the litigants have no means of resolving and that conflict casts a shadow on Judge Moore's impartiality in the *Selkridge* cases.

Viewing the record as a whole, given the appearance that Judge Moore's impartiality was compromised, we conclude that it was error for Judge Moore to enter the December 23rd orders in *Selkridge I* and *Selkridge II*, and that this error was plain. Further, because this error compromised the integrity of the proceedings, "prejudice is presumed." *Antar*, 53 F.3d at 573. Finally, we exercise our discretion to review this claim of error because it "seriously affect[ed] the . . . integrity [and] public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotations omitted).

### E. Holding

Judge Moore's reaction to Attorney Rohn's intemperate public criticism is certainly understandable. Moreover, his sensitivity to the possible impact of that reaction on his ability to judge fairly cases in which she was counsel is commendable. We further agree with Judge Moore that the passage of time does, indeed, heal wounds, and we do not mean to suggest that it is not presently appropriate for him to sit on cases involving Attorney Rohn.[19]

We do hold, however, that a trial judge cannot, without explanation, recuse himself in a substantial number of cases and, at substantially the same time, decline to recuse himself in another group of cases that appears indistinguishable for purposes of recusal. From an appearance perspective, that is precisely what Judge Moore did here, and he committed plain error in doing so.

### F. The Remedy

"Although § 455 defines the circumstances that mandate disqualification of federal judges, it neither prescribes nor prohibits any particular remedy for a violation of that duty. [Rather,] Congress has wisely delegated to

---

[19] In particular, we, of course, express no opinion on the propriety of Judge Moore's refusal to recuse himself in *United States v. Roebuck*, 289 F. Supp. 2d 678 (D.V.I. 2003).

the judiciary the task of fashioning remedies that will best serve the purpose of the legislation." *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862 (1988).

In *Liljeberg*, the Supreme Court approved the vacatur of a final judgment entered by a district judge who should have disqualified himself. It explained, however, that this remedy would not be required in all such cases. It suggested that, in deciding whether to vacate such a final judgment, a court should "consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." *Id*. at 864. With respect to the second factor, the Court concluded that vacating the judgment would help prevent injustice in other cases "by encouraging a judge or litigant to more carefully examine possible grounds for disqualification and to promptly disclose them when discovered." *Id*. at 868.

The *Liljeberg* Court expressly noted that "[a]s in other areas of the law, there is . . . room for harmless error" in § 455(a) analysis, *id*. at 862, and we have heretofore read that case as approving harmless error analysis when applied with sensitivity not only to the interests of the parties, but also to the interests of other litigants and to the public's interest in the integrity of the court system. *See In re School Asbestos Litigation*, 977 F.2d 764, 785-88 (3d Cir. 1992); *see also Patterson v. Mobil Oil*

*Corp.*, 335 F.3d 476, 485-86 (5th Cir. 2003); *In re Continental Airlines Corp.*, 901 F.2d 1259, 1263 (5th Cir. 1990); *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525-27 (11th Cir. 1988).

Compared with situations like the one before us in *In re School Asbestos Litigation*, determining the appropriate remedy is not a complex matter. The letter came late in the litigation, and only the final decisions currently before us on direct appeal could possibly have been affected. Moreover, both of those decisions are subject to plenary review by this court, one because it is a summary judgment and the other because it is based on the District Court's resolution of a pure issue of law.

In this context, we have two choices: (1) we can vacate the orders before us and remand with instructions that the cases be assigned to a new district judge for resolution of the pending motions and possible further proceedings; or (2) we can independently review the record and determine whether the *res judicata* and Rule 60(b) issues were correctly decided as a matter of law and remand only in the event they were not, reasoning that, if impartial decision makers of this court, in addition to finding a violation of § 455(a), independently approve the orders at issue, any error is harmless and Omaha is fairly entitled to its judgments. Where, as here, it appears clear that the failure to recuse did not affect the dispositions of the plaintiff's claims and a remand, accordingly, would only prolong the

19

litigations, we conclude that the second approach is the appropriate one.

As we explain hereafter, any trial judge presented with this record would be required as a matter of law to enter summary judgment in *Selkridge II* and to decline to vacate the judgment in *Selkridge I*. As a result, we perceive no unfairness to Selkridge from declining to vacate the judgments against her, and it seems apparent to us that a contrary decision would serve only to impose an unnecessary, additional litigation burden on Omaha and the District Court. Moreover, in these circumstances, we believe our determination that a violation of § 455(a) occurred will provide virtually the same encouragement to other judges and litigants as would a remand. Finally, we conclude (1) that our independent review and determination of the relevant legal issues will provide as much legitimacy to these particular final judgments as they would have following a remand, reexamination by another District Judge, and a subsequent appellate affirmance; and (2) that our finding of plain error on Judge Moore's part constitutes a corrective process sufficient to assure continuing confidence in the judicial process.[20]

---

[20] Our use of "harmless error" analysis in determining the appropriate remedy is not in tension with the Court's holding in *Antar* that prejudice is presumed once an appearance of impartiality is shown. Under *Antar*, an effect on the *proceedings*

## IV. *Summary Judgment in* Selkridge II: *The Merits*

The District Court granted summary judgment for Omaha in *Selkridge II* based on claim preclusion. For claim preclusion to apply, there must have been "[1] a final judgment on the merits in [2] a prior suit involving the same parties or their privies, and [3] a subsequent suit based on the same cause of action." *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 158 (3d Cir. 2001). "If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded." *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187, 194 (3d Cir. 1999). Selkridge argues only that the ERISA claim in *Selkridge II* is not subject to claim preclusion because the decision in *Selkridge I* was neither final nor on the

---

*before the compromised judge* is presumed for the purpose of determining whether appellate review is permissible in the absence of a motion to recuse. If a contrary result had been reached in *Antar*, there would have been no appellate review and the District Court's judgment would have remained in place despite the fact that its integrity had been impaired, a result that no appellate court could sanction in good conscience. Our "harmless error" analysis, on the other hand, accepts the presumption of prejudice at the trial level, but takes into account the fact that plain error review makes further, curative proceedings possible in the Court of Appeals.

merits.

Selkridge asserted only state law claims in her complaint in *Selkridge I*, and Omaha asserted an affirmative defense of ERISA preemption as to all of those claims. The District Court sustained that defense and entered a final judgment on every claim asserted. That final judgment determined that there could be no recovery on any claim.

As Selkridge stresses, an argument can be made that the District Court abused its discretion by failing to provide an opportunity to amend.[21] But that is an argument that should have been advanced in a timely appeal and does not render the District Court's summary judgment anything other than a final judgment on the merits. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 959 (9th Cir. 2002) (where defendants brought motion to dismiss based upon all of plaintiffs' claims being preempted by ERISA, "[p]laintiffs were on notice that their claims were preempted by ERISA, and they did not seek leave to amend or dismiss 'without prejudice.' . . . Absent a request from plaintiffs to amend, the district court had no other alternative but to dismiss the case, finding the only claims plaintiffs presented were preempted.").

Accordingly, the District Court had no choice but to dismiss *Selkridge II* because the claim in that lawsuit could have been raised in *Selkridge I*.

V. *The Rule 60(b) Motion in* Selkridge I: *The Merits*

Rule 60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Selkridge urges that the District Court

---

[21] *But see Ramsgate Court Townhouse Ass'n v. West Chester Borough*, 313 F.3d 157, 161 (3d Cir. 2002) (District Court did not abuse its discretion in failing to address a request for permission to amend the complaint contained in a brief but never made the subject of a motion).

committed reversible error by failing to vacate the summary judgment in *Selkridge I* pursuant to the residual provision of Rule 60(b)(6). Her argument is that the District Court committed legal error in entering that summary judgment. Even if that were true, however, it would not, as a matter of law, justify relief under Rule 60(b)(6).

As we held in *Martinez-McBean v. Government of Virgin Islands*, 562 F.2d, 908, 912 (3d Cir. 1977), "[L]egal error does not by itself warrant the application of Rule 60(b). The correction of legal errors committed by the district courts is the function of the Courts of Appeals. Since legal error can usually be corrected on appeal, that factor without more does not justify the granting of relief under Rule 60(b)(6). We know of no authority to the contrary." *See also Morris v. Horn*, 187 F.3d 333, 343-44 (3d Cir. 1999) ("What [Appellant] is attempting to raise as a Rule 60(b) motion is in fact what he should have brought as an appeal.").

## VI. *Conclusion*

For the foregoing reasons, we will dismiss the appeal from the February 22, 2002, grant of summary judgment in *Selkridge I*, No. 03-1146, for lack of jurisdiction and will affirm the District Court's orders entered on December 23, 2002, in *Selkridge I* (No. 03-1146) and *Selkridge II* (No. 03-1147).