

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-12-2008

# Miller v. Hendricks

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5489

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Miller v. Hendricks" (2008). *2008 Decisions.* Paper 1030.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1030

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5489
_____

CORIE MILLER,

Appellant,


v.


ROY L. HENDRICKS, Warden;
THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY,

Appellees.


_____


On Appeal from the United States District Court
for the District of New Jersey

(D.C. No. 03-cv-02651)
District Judge: Honorable William J. Martini

_____


Argued April 9, 2008
Before: SMITH, HARDIMAN and COWEN, *Circuit Judges*.

(Filed: June 12, 2008 )



Mary Gibbons (Argued)
600 Mule Road
Toms River, NJ 08757-0000
        *Attorney for Appellant*

Maura K. Tully (Argued)
Office of Attorney General of New Jersey
Division of Criminal Justice
P.O. Box 086
25 Market Street
Richard J. Hughes Justice Complex
Trenton, NJ 08625-0000
   *Attorney for Appellees*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Corie Miller appeals from an order of the United States District Court for the District of New Jersey dismissing his petition for a writ of habeas corpus. Miller argues that the District Judge — the Honorable William J. Martini — should have recused himself because of a 1995 statement made by Judge Martini on the floor of the United States House of Representatives while he was serving as a Congressman. We will affirm.

I.

As we write for the parties, we will recount only those facts essential to our decision.

A jury in New Jersey state court convicted Miller of murdering Cindy Villalba, a college student who was shot and killed during an attempted armed robbery. After exhausting his appeals in the state courts, Miller filed a petition for writ of habeas corpus with the District Court in June 2003, alleging various trial errors, as well as ineffective

2

assistance of counsel.  Following full briefing, but before the District Court issued its decision, Miller discovered the following July 25, 1995 floor statement by then-Congressman Martini:

> Mr. Speaker, I rise today to address the House of Representatives with regard to a tragedy that has become far too common in this day and age.  I am referring to the acts of senseless violence committed against our children that tear at the fabric of our society.  On a street in Paterson, NJ, a town in my congressional district, a young woman's dream to become a Wall Street entrepreneur or a scholar was shattered on Friday.  She was attacked by unknown assailants who had approached her and demanded money.  When the young woman told her attackers that she had no money one of them fired shots through the driver's side window.  She was struck by the barrage of bullets; her best friend and community were left in tears, by her side.

Congressman Martini proceeded to identify the young woman as Villalba, and described her various academic achievements and community service activities.  He then urged Congress and the nation to "summon the strength to dedicate ourselves to ending crime," extended his condolences to the Villalba family, and concluded, "[i]t is a shame when a woman with such a bright future is taken from this world in such a senseless manner.  She will be missed by everyone whose heart she touched and whose life she brightened."

Miller claims to have consulted with an attorney as soon as he discovered the statement, and was advised to file a motion for recusal under 28 U.S.C. § 455.  Before he could do so, however, Judge Martini issued his opinion denying the writ.  Miller neither filed a motion for reconsideration nor requested Judge Martini to recuse himself.  Instead,

3

Miller raised the issue for the first time in his application for a certificate of appealability from this Court, which we granted as to one issue: "whether Judge Martini should have recused himself pursuant to 28 U.S.C. § 455(a) and § 455(b)(1) and (3)."

## II.

Where, as here, a party did not seek recusal in the district court, we review for plain error. *See Selkridge v. United Omaha Life Ins. Co.*, 360 F.3d 155, 166-67 (3d Cir. 2004). Under the plain error standard, a district court's order may be reversed only where "[t]here [was] an 'error' that is 'plain' and that 'affect[s] substantial rights.'" *United States v. Antar*, 53 F.3d 568, 573 (3d Cir. 1995) (alterations in original) (internal citation omitted). Generally, to "affect substantial rights" an error "must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). A review of the record must reveal "egregious error or a manifest miscarriage of justice." *United States v. Lore*, 430 F.3d 190, 211 (3d Cir. 2005).

Section 455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." If a reasonable observer aware of all the circumstances "would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." *In re Prudential Ins. Co. of Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 343 (3d Cir. 1998) (internal quotations and citations omitted). In

addition, § 455(b) sets forth a number of specific circumstances requiring recusal, two of which are potentially relevant here. A judge shall recuse "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," 28 U.S.C. § 455(b)(1), or "[w]here he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy." 28 U.S.C. § 455(b)(3). Generally, beliefs or opinions requiring recusal "must involve an extrajudicial factor," *Antar*, 53 F.3d at 574 (citation omitted), and opinions formed "on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

In this case, Miller argues that the 1995 floor statement was based upon some unknown source of "detailed extrajudicial information" available to then-Congressman Martini. He points out that then-Congressman Martini appeared to be aware of specific details of the crime and was able to relate information regarding the victim and her achievements. He also asserts that the statement expresses sympathy for Villalba and her family. Thus, Miller contends that the statement demonstrates the "personal knowledge of disputed evidentiary facts" and the "personal bias or prejudice concerning a party" that

5

requires recusal under § 455(b)(1). Miller also argues that the statement constituted "an opinion concerning the merits of the particular case in controversy" made while serving as a government official, making recusal mandatory under § 455(b)(3). Finally, Miller asserts that the statement creates circumstances "in which his impartiality might reasonably be questioned" under § 455(a).

Even assuming for the sake of argument that Judge Martini's failure to recuse *sua sponte* was error, we are confident that it was not the "egregious error" or "manifest miscarriage of justice" that is required under the plain error standard. Miller's failure to present the District Court with an opportunity to address the issue in the first instance leaves a scant record on which to determine whether a reasonable observer, aware of *all* the circumstances, might reasonably question Judge Martini's impartiality. We are left to speculate about Judge Martini's recollection of the statement, the source of the information contained in the statement, and whether he had any continuing interest or involvement in the matter. Moreover, a review of the record does not lead ineluctably to the conclusion that Judge Martini harbored a personal bias or prejudice against Miller. Congressman Martini never mentioned Miller or even indicated he was aware that he had been implicated in the crime, referring only to "unknown assailants." Indeed, the floor statement could simply be read as a general condemnation of violent crime that would not warrant recusal. *See United States v. Cooley*, 1 F.3d 985, 994 n.4 (10th Cir. 1993) ("[G]enerally stated views, even when expressed strongly, against a wide variety of

conduct . . . are not unreasonable for a judge, and would not, absent more, disqualify a judge from sitting on a case involving the same subject matter").  And it is just as plausible that the information in the statement came not from some "detailed extrajudicial source of information" available only to then-Congressman Martini, but from newspaper accounts of the incident.  *See United States v. Bonds*, 18 F.3d 1327, 1330 (6th Cir. 1994) (recusal not required where judge "reads newspaper articles, magazines, or books that may relate to a case that may come before him").  Accordingly, we find no egregious error or manifest miscarriage of justice.  *Lore*, 430 F.3d at 211.

Even if Miller could satisfy the plain error standard, we would not reverse and remand the case to a new district judge.  The remedy for an erroneous denial of a recusal motion is discretionary.  *Selkridge*, 360 F.3d at 167.  We must "consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process," *id.* at 171  (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)), and will reverse and remand only where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* at 166 (quoting *Olano*, 507 U.S. at 732).

Here, reversing and remanding the case for assignment to a new judge would impose a substantial burden on the parties and the District Court for what would be merely an academic exercise.  As counsel conceded at oral argument, Miller's request for

7

a certificate of appealability was denied on the merits.  Accordingly, this Court has already concluded that no reasonable jurist would find that the District Court erred in denying Miller's petition for writ of habeas corpus.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificate of appealability should issue only where "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong").  We will not ask a new district judge to consider the merits of a legal argument that we have already concluded no reasonable jurist would accept.

For all the foregoing reasons, we will affirm the judgment of the District Court.