

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-6-2007

# USA v. De Graaff

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2093

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. De Graaff" (2007). *2007 Decisions.* Paper 806.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/806

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-2093

UNITED STATES OF AMERICA,

v.

KATHLEEN T. DE GRAAFF,

Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 05-cr-00829)
District Judge: Hon. William J. Martini

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 4, 2007

BEFORE: SMITH and COWEN,
and SILER*, Circuit Judges

(Filed:  July 6, 2007)

*Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge, U.S. Court of
Appeals for the Sixth Circuit, sitting by designation.

OPINION

COWEN, <u>Circuit Judge</u>.

Kathleen T. De Graaff appeals from an order entered by the United States District Court for the District of New Jersey affirming a judgment of conviction and sentence entered by a United States Magistrate Judge following a bench trial. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we will affirm.

I.

Because we write solely for the parties, we set forth only those facts necessary to our decision.

On April 18, 2004, police officers of the Department of Veterans Affairs ("VA") issued De Graaff two Violation Notices, charging her with simple assault in violation of 18 U.S.C. § 113(a)(5), and disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11). The charges arose out of an incident involving De Graaff and a nurse at the VA New Jersey Healthcare Facility in Lyons, New Jersey.

At her initial appearance on June 24, 2004, De Graaff submitted a financial affidavit to the court. Based upon the affidavit, the Magistrate Judge appointed a federal public defender to represent De Graaff. Thereafter, the Magistrate Judge entered a plea of not guilty onto the record and set the next court date, noting that officers from the VA had informed her that the security officers involved in the incident were not present in court.

Before concluding the initial appearance, the Magistrate Judge discussed a letter which De Graaff had written and addressed to the Chief Judge of the District Court. The letter apparently dealt with De Graaff's concerns about problems at the VA hospital, because the Magistrate Judge responded that she "c[ould]n't order [] people at the V.A. Hospital to rectify whatever problems you think are there." (S.A. at 6.) Despite the Magistrate Judge's lack of authority, he asked De Graaff several questions concerning her trips to the VA hospital and the laundering of her late husband's clothing during his stay at the VA hospital, which De Graaff answered. Subsequently, the Magistrate Judge concluded the hearing.

At no time during the initial appearance did the Magistrate Judge inform De Graaff of the penalties associated with the charges against her, her right to retain counsel, or her right not to make a statement, nor did the Magistrate Judge advise De Graaff that any statement she made may be used against her. The Magistrate Judge stated only in passing that she "d[id]n't know what it is that they allege you did, which gives rise to the charge of assault and being a disorderly person." (*Id.*)

At a hearing held on July 29, 2004, De Graaff indicated to the Magistrate Judge that she wished to apply for pretrial diversion. The Magistrate Judge therefore postponed the trial pending a decision on defendant's pretrial diversion application.

On August 26, 2004, the Magistrate Judge held a pretrial conference. At the conference, De Graaff indicated to the Magistrate Judge that she did not wish to proceed with pretrial diversion. The Magistrate Judge, therefore, scheduled the matter for trial.

Toward the end of the conference, De Graaff spoke out of turn, prompting the Magistrate Judge to warn De Graaff that if she spoke or disrupted the courtroom, he would have her "locked up." (*Id.* at 28.) When De Graaff stated that she had "one thing to say," the Magistrate Judge retorted, "You have nothing to say. Leave the courtroom, Mrs. De Graaff." (*Id.*) After De Graaff had left the courtroom, the Magistrate Judge's clerk asked what she should do if De Graaff called inquiring about transcripts of the proceedings. The Magistrate Judge instructed the clerk to "tell [De Graaff] she can get all of her transcripts at once at the end." (*Id.* at 29.)

On September 15, 2004, the government superceded the charges by way of Complaint. The Complaint charged De Graaff with assault by striking, beating, or wounding in violation of 18 U.S.C. § 113(a)(4), in addition to the disorderly conduct charge.

A bench trial on the charges occurred on September 30, 2004 and November 23, 2004 before the Magistrate Judge. The Magistrate Judge found De Graaff guilty of assault and disorderly conduct. She was sentenced to one year of probation, ordered to refrain from contact with the VA nurse, and ordered to participate in a mental health program. De Graaff appealed her conviction and sentence to the District Court, which affirmed, and this appeal ensued.

## II.

The District Court's legal determinations are reviewed de novo, *United States v. Ledesma-Cuesta*, 347 F.3d 527, 530 (3d Cir. 2003), and its factual findings are reviewed

4

for clear error, *United States v. Helbling*, 209 F.3d 226, 237 (3d Cir. 2000).

## A.

De Graaff's first contention is that her conviction should be set aside because the Magistrate Judge failed to comply with the procedures set forth in Rule 58(b) of the Federal Rules of Criminal Procedure, governing initial appearances. For the reasons expressed below, we conclude that the Magistrate Judge's non-compliance with Rule 58(b) amounts to harmless error, and, thus, even assuming *arguendo* that De Graaff raised this claim below, we cannot find any error in the District Court's judgment.

Rule 58 imposes a mandatory obligation on a magistrate judge to inform a defendant at her initial appearance on a petty offense of the following: (1) the charge(s), (2) the minimum and maximum penalties, (3) the right to retain counsel, and (4) the right not to make a statement, and that any statement made may be used against her. Fed. R. Crim. P. 58(b)(2)(A)-(B), (D). Here, there is no question that the Magistrate Judge failed to comply with these procedures.

Despite the importance of the Rule 58 procedures, we are compelled to conclude that the Magistrate Judge's error was harmless because it is "highly probable" that the omission did not contribute to the conviction. *United States v. Zehrbach*, 47 F.3d 1252, 1265 (3d Cir. 1995) (internal quotation marks, emphasis, and citation omitted) (setting forth the harmless error standard for non-constitutional violations). While the Magistrate Judge unquestionably failed to advise De Graaff of her right to retain counsel, it is highly improbable that De Graaff would have exercised that right, given that her financial

5

situation necessitated the appointment of a federal public defender. Similarly, while the Magistrate Judge did not inform De Graaff of her right not to make a statement and that any statement might be used against her, there is no indication that the statements she made at her initial appearance, concerning the frequency of her visits to the VA hospital and the laundering of her husband's clothes, or any inferences drawn therefrom, were used against her at trial.

Likewise, no prejudice resulted from the Magistrate Judge's failure to inform De Graaff of the precise charges against her. De Graaff had notice of the initial charges brought against her by way of the Violation Notices, and the Magistrate Judge at least adverted to the "charge of assault and being a disorderly person" at the initial appearance. (S.A. at 6.) As defense counsel conceded at the beginning of trial, De Graaff "had notice of the facts" and had "been able to investigate and prepare." (*Id.* at 40.)

Finally, although we are very troubled by the Magistrate Judge's complete failure to address the minimum and maximum penalties at the initial appearance, it is highly improbable that any prejudice resulted. De Graaff was made aware of the maximum penalty for the upgraded assault charge at the beginning of trial, when the government stated in open court that the penalty for assault by striking, beating, or wounding was "a maximum [of] six months imprisonment, and a maximum fine of $5,000." (*Id.* at 38.) There is no indication in the record that De Graaff would have proceeded differently had she known of the penalties at the initial appearance. Moreover, even if she would have pled guilty, it is highly improbable that she would have received a lesser sentence than the

6

one year of probation.

In summary, we conclude that while the Magistrate Judge failed to comply with the Rule 58 procedures, the District Court's decision to affirm the judgment of conviction was not erroneous because there is a "high probability" that the Magistrate Judge's error did not contribute to the conviction.

B.

De Graaff's next argument is that the Magistrate Judge evinced a deep-seated prejudice and hostility toward her, necessitating vacatur of her conviction. Again even assuming *arguendo* that De Graaff raised this claim below, we conclude that the record does not support her claim of bias and therefore find no error in the District Court's decision.

Under 28 U.S.C. § 455(a), a magistrate judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The test for recusal under § 455(a) is whether a "reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 368 F.3d 289, 301 (3d Cir. 2004). Generally, "beliefs or opinions which merit recusal must involve an extrajudicial factor." *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 167 (3d Cir. 2004) (internal quotation marks and citation omitted). Absent an extrajudicial factor, the facts must display a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994).

7

De Graaff claims that the above-mentioned letter she wrote to the Chief Judge of the District Court was the impetus for the Magistrate Judge's prejudice and hostility. She claims that after learning about the letter, the Magistrate Judge committed "countless errors," but specifically refers only to an alleged violation of her right against self-incrimination. She complains that the Magistrate Judge's questioning at her initial appearance required her to give self-incriminating answers and emanated from bias.

After careful review of the record, we cannot conclude that a reasonable person, knowing all of the circumstances, would have questioned the Magistrate Judge's impartiality in this case. While De Graaff's letter constitutes an extrajudicial factor, and the Magistrate Judge did make some errors in this case, such as his failure to comply with Rule 58, there is no evidence that the Magistrate Judge acted with bias against De Graaff. Indeed, the Magistrate Judge's questioning at the initial appearance was responsive to De Graaff's own stated concerns about problems which she perceived existed at the VA hospital, not any bias or hostility toward De Graaff. Moreover, as discussed above, there is no indication that the answers which De Graaff gave in response to the Magistrate Judge's questioning were used against her at trial.

In sum, we conclude that the record does not support a finding of an extrajudicial factor causing impartiality or such a high degree of favoritism or antagonism as to make fair judgment impossible. Thus, we find no error in the District Court's rejection of De

Graaff's claim of bias.[1]

C.

De Graaff's final contention is that she was a victim of a conspiracy to deny her access to tape recordings of the proceedings.  The District Court rejected this argument, as do we, because the conspiracy claim is unsupported by the evidence.

In support of her conspiracy claim, De Graaff points to the following statement made by the Magistrate Judge to her clerk on August 26, 2004 at the end of the pretrial conference: "If [De Graafff] calls you, tell her she can get all of her transcripts at once at the end."  (S.A. at 29.)  De Graaff claims that by remaining silent after the Magistrate Judge made this statement, the prosecutor joined the alleged conspiracy.  She further asserts that in papers filed with the District Court, the prosecutor misquoted a portion of the August 26, 2004 hearing transcript.  Whatever the meaning of the Magistrate Judge's and the prosecutor's actions, the record reveals that De Graaff was, in fact, allowed access to tape recordings of the proceedings.  De Graaff's trial counsel indicated that in preparation for trial, he had listened to the tape recordings of the pretrial proceedings.  Similarly, her post-trial counsel acknowledged that he had ordered and obtained

---

[1] In the part of her brief addressing bias, De Graaff also posits that the Magistrate Judge violated her right to a speedy trial by not setting her case for trial at her initial appearance, thereby causing a one-month delay in the proceedings.  Even assuming *arguendo* that a constitutional right to a speedy trial attaches to petty offenses, we find no violation in this case requiring reversal because De Graaff has not alleged that she suffered any prejudice as a result of the brief delay.  *See Chapman v. California*, 386 U.S. 18, 24 (1967) (no reversal required where constitutional error is "harmless beyond a reasonable doubt").

9

transcripts of all of the proceedings.  At most, De Graaff's access to the tape recordings was delayed; however, there is no indication in the record that the delay caused her any prejudice whatsoever.  Given this factual record, we cannot conclude that the District Court committed error.

For the foregoing reasons, the order of the District Court entered on March 20, 2006 will be affirmed.

_____