NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 18-1583 and 18-1607
_____

ESTATE OF PETER ACCURSO,
                              Appellant in 18-1583

v.

INFRA-RED SERVICES, INC.; ROOFING DYNAMICS GROUP, LLC; ROOFING
DYNAMICS, INC., BRIAN LAND; AUDREY STREIN

_____

ESTATE OF PETER ACCURSO

v.

INFRA-RED SERVICES, INC.; ROOFING DYNAMICS GROUP, LLC; ROOFING
DYNAMICS, INC., BRIAN LAND; AUDREY STREIN,
                              Appellants in 18-1607

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 2-13-cv-07509)
District Judge:  Honorable Gene E. K. Pratter
_____

Argued October 23, 2019

BEFORE:  GREENAWAY, JR., PORTER, and GREENBERG, *Circuit Judges*.

(Filed: February 20, 2020)
_____

Eric G. Marttila
High Swartz
116 East Court Street

Doylestown, PA 18901

James B. Shrimp [ARGUED]
High Swartz
40 East Airy Street
Norristown, PA 19404
   *Attorneys for Appellant in 18-1583*

Todd M. Mosser [ARGUED]
Suite 801
211 North 13th Street
Philadelphia, PA 19107
   *Attorney for Appellants in 18-1607*

_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

We address today a recurrent issue before our Court, whether a litigant is an employee or independent contractor. As would appear logical, the answer is nuanced. Indeed, now after trial, both Plaintiff and Defendants appeal the denial of post-trial motions to vacate verdicts unfavorable to the respective parties. Most prominent is Defendants' appeal seeking to re-examine the question of whether the District Court erred in finding, on summary judgment, that Plaintiff was Defendants' employee. For the following reasons, we will affirm the District Court in part, and reverse and remand for determination of Plaintiff's attorneys' fees under Pennsylvania's Wage Payment and Collection Law.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

## I.     BACKGROUND

### A.     Factual Background

Defendants-Appellees/Cross-Appellants are Brian Land, Audrey Strein, and the three roofing companies they own and operate (collectively, "Defendants").  In September 2004, Plaintiff-Appellant/Cross-Appellee Peter Accurso signed an agreement entitled "independent contractor agreement" with Defendants.[1]  The agreement provided that Accurso would market and sell Defendants' roofing services within a set territory, defined by telephone area codes.  In return Accurso would receive "fifty percent of all commissions or income" from leads he generated within his territory. App. 207.  The agreement had a four-year term, and would automatically renew every two years, "until canceled by either party upon written notice to the other party."

Over the course of Accurso's employment, Land had suspected Accurso of diverting business opportunities away from Defendants.  As a result, Land requested that Accurso undergo polygraph examinations on two separate occasions.  On January 4, 2012, Defendants' legal counsel provided Accurso with a "Notice of Immediate Termination."  The reasons for termination included diverting business opportunities from Defendants as well as giving less than 24 hours' notice before taking a week-long vacation in December 2011.  The Notice also stated the amount Accurso would be paid for his prior services, and it directed Accurso to return all trade secrets and refrain from contacting certain customers.

_____

[1] A notice of death of Peter Accurso was filed with this Court on August 28, 2018. The Estate of Peter Accurso was appointed to represent his interests following his death.

## B. Procedural Background

Accurso brought seven claims against Defendants: (1) violation of the Employee Polygraph Protection Act ("EPPA"); (2) breach of contract; (3) intentional interference with contractual relations (against Land and Strein only); (4) violation of Pennsylvania's Wage Payment and Collection Law ("WPCL"); (5) unjust enrichment; (6) intentional infliction of emotional distress; and (7) civil conspiracy. Defendants filed counterclaims against Accurso for: (1) breach of contract; (2) breach of fiduciary duty; (3) fraudulent misrepresentation; (4) intentional interference with contractual relations; and (5) misappropriation of trade secrets under the Pennsylvania Uniform Trade Secrets Act ("PUTSA").

The District Court dismissed Accurso's unjust enrichment and intentional infliction of emotional distress claims and later entered summary judgment for Defendants on Accurso's claim for interference with contractual relations against Land and Strein as well as Accurso's claim for civil conspiracy.[2] However, it denied summary judgment to Defendants on Accurso's EPPA, breach of contract, and WPCL claims. Regarding the WPCL claim, the District Court rejected Defendants' argument that Accurso was precluded from recovering under the WPCL because he was an independent contractor. The District Court determined, as a matter of law, that Accurso was Defendants' employee. Accurso's remaining claims went to trial along with Defendants'

---

[2] The District Court also dismissed Accurso's EPPA claim to the extent it was based on the allegation that Defendants required Accurso to submit to a 2008 polygraph examination, finding the claim was barred by the statute of limitations. However, the District Court concluded the claims based on the adverse employment action as a result of the 2008 polygraph examination were not time-barred.

4

counterclaims for breach of contract, breach of fiduciary duty, fraudulent misrepresentation, intentional interference with contractual relations, and misappropriation of trade secrets under PUTSA.

After a six-day trial, the jury returned a verdict for Accurso on the WPCL claim and awarded Accurso $51,400, but found Defendants had not violated the EPPA. The jury also determined Accurso had materially breached the agreement. The jury awarded Defendants $13,000 on their breach of contract counterclaim. Additionally, the jury returned a verdict for Defendants on the PUTSA claim and assessed Accurso $63,000 in damages. The jury found in favor of Defendants on the breach of fiduciary duty claim, fraudulent misrepresentation claim, and intentional interference with contractional relations claim, awarding Defendants $37,606, $1, and $1, respectively.

Post-trial, Accurso filed a motion for attorneys' fees, liquidated damages, costs, and pre-judgment interest, as well as a motion for judgment as a matter of law. In the alternative, he moved for a new trial or to alter and amend judgment, seeking to overturn the jury's verdict against him as to his EPPA claim and Defendants' counterclaims for breach of contract, breach of fiduciary duty, fraudulent misrepresentation, intentional interference with contractual relations, and misappropriation of trade secrets.

Defendants also filed post-trial motions for attorneys' fees, exemplary damages, costs, and pre-judgment interest, to alter judgment, and for judgment as a matter of law on the WPCL claim. On February 16, 2018, the District Court issued a final order denying all of the post-trial motions.

5

Accurso now appeals the denial of his motion for judgment as a matter of law, or, in the alternative, for a new trial or to alter and amend judgment as to his EPPA claim and Defendants' PUTSA counterclaim. He also appeals the denial of attorneys' fees on the WPCL claim. Defendants cross-appeal the following: (1) the denial of their motion for judgment as a matter of law on the WPCL claim; (2) the denial of their motion for attorneys' fees, exemplary damages, costs, and interest; and (3) the denial of their motion seeking to "mold" the judgment.

On this appeal and cross-appeal we review two orders: (1) the District Court's August 10, 2015 order entered on Defendants' motion for summary judgment denying that motion on Accurso's WPCL claim, *Accurso v. Infra-Red Servs., Inc.*, 119 F. Supp. 3d 316, 330 (E.D. Pa. 2015), and an order entered on post-trial motions, *Accurso v. Infra-Red Servs., Inc.*, No. 13-7509, 2018 WL 924985 (E.D. Pa. Feb. 16, 2018).

## II.     JURISDICTION

The District Court had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction was proper pursuant to 28 U.S.C. § 1367. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1291, which authorizes appeals from final decisions of the District Court. *Selkridge v. United of Omaha Life Ins. Co.*, 360 F.3d 155, 160 (3d Cir. 2004).

## III.     STANDARD OF REVIEW

This Court exercises "plenary review of an order granting or denying a motion for judgment as a matter of law[.]" *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993).

6

In reviewing the District Court's denial of a motion for a new trial, we ask whether the District Court abused its discretion. *See Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 (3d Cir. 1995). We also review the denial of motions to alter or amend a judgment filed pursuant to Fed. R. Civ. P. 59(e) for abuse of discretion. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 673 (3d Cir. 1999).

## IV.  DISCUSSION

The parties each raise three issues on appeal.  Accurso seeks an award of costs and fees on his WPCL claim, and appeals the District Court's denial of his post-trial motion challenging the jury's verdict rejecting his EPPA claim and its verdict in favor of Defendants on the PUTSA claim.  Defendants challenge the District Court's: (1) denial of summary judgment on the WPCL claim, (2) denial of attorneys' fees and punitive damages on its PUTSA claim, and (3) refusal to "mold" the verdict.

For the following reasons, we will affirm the District Court's denial of both Accurso's and Defendants' post-trial motions as to all claims except Accurso's request for attorneys' fees on the WPCL claim, which we reverse and remand to the District Court for further consideration, in accordance with this opinion.

### A.  Defendants' Post-Trial Motion on WPCL Verdict and Accurso's Post-Trial Motion for WPCL Attorneys' Fees

Defendants raise two issues regarding the WPCL claim.  First, they argue the District Court should have entered summary judgment in their favor on Accurso's WPCL

7

claim because Accurso was an independent contractor. Second, Defendants contend that Accurso's compensation was not "earned" according to the WPCL, and, as such, Accurso is precluded from recovering under the WPCL. We will provide background of the WPCL and then proceed to review and affirm the District Court's order denying summary judgment to Defendants on Accurso's WPCL claim. We also find there was sufficient evidence for the jury to have awarded a verdict in favor of Accurso on the WPCL claim.

## 1.

Pennsylvania's WPCL provides:

> Whenever an employer separates an employee from payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

43 Pa. Cons. Stat. § 260.5(a) (2019). Only an "employee" is entitled to recovery under the WPCL. *See Williams v. Jani-King of Phila.*, 837 F.3d 314, 319–20 (3d Cir. 2016). However, the WPCL does not provide a statutory definition for the term "employee." In deciding whether a worker is an "employee" under the WPCL, Pennsylvania courts have looked to the Unemployment Compensation Act and the Pennsylvania Workers' Compensation Act for guidance. *Morin v. Brassington*, 871 A.2d 844, 849–50 (Pa. Super. Ct. 2005); *Frank Burns, Inc. v. Interdigital Commc'ns Corp.*, 704 A.2d 678, 680 (Pa. Super. Ct. 1997) (applying the definitions in the Unemployment Compensation Act and Workers' Compensation Act to the WPCL).

8

Courts apply a multifactor test to determine whether a worker is an employee or independent contractor under these two Acts. The factors include:

> the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

*Morin*, 871 A.2d at 850 (quoting *Lynch v. Workmen's Comp. Appeal Bd. (Connellsville Area Sch. Dist.)*, 554 A.2d 159, 160 (Pa. Commw. Ct. 1989)). The factors "serve as general guidance" so the test is not limited to these considerations. *Lynch*, 554 A.2d at 160. Although no factor is dispositive, the "paramount" factor is the right to control the manner in which the work is accomplished. *Id.*; *see also Universal Am–Can, Ltd. v. Workers' Comp. Appeal Bd.*, 762 A.2d 328, 333 (Pa. 2000) (noting that in the workers' compensation context, "control over the work to be completed and the manner in which it is to be performed are the primary factors in determining employee status"). The Pennsylvania Supreme Court has also held that the right to control is more significant than actual control. *See id.* at 333 ("[I]t is the existence of the *right* to control that is significant, irrespective of whether the control is actually exercised." (emphasis in original)).[3]

---

[3] At oral argument, we raised questions about the Fair Labor Standards Act ("FLSA"). We note that the employee/independent contractor analysis under the WPCL differs somewhat from the test under the FLSA. But to the extent the FLSA and WPCL share the similar statutory purpose of ensuring a worker is entitled to fair compensation, much like Pennsylvania's other worker compensation statutes, the FLSA analysis may be informative here. *Compare Williams*, 837 F.3d at 320 ("The WPCL gives employees the

In Pennsylvania, "whether a claimant is an independent contractor or an employee is a question of law." *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Exp.)*, 631 A.2d 693, 696 (Pa. Commw. Ct. 1993).[4] While we have recognized that there may be cases where one or more genuine disputes of material facts preclude a trial court from drawing a conclusion as a matter of law on the "employee" or "independent contractor" issue, Defendants conceded, for purposes of summary judgment, that "all of these facts were undisputed." Defendants' Br. at 29. The District Court was therefore free to

right to institute a civil action to recover wages owed under the statute." (citations omitted)) *with Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (noting the FLSA was designed to ensure workers would "be protected from the evil of overwork as well as underpay" and its statutory scheme grants employees access to the courts to enforce those remedies (internal quotations and citation omitted)).

    Our FLSA cases counsel us to "examine the 'circumstances of the whole activity'" in deciding whether an individual is an employee or independent contractor. *Donovan v. DialAmerica Mktg.*, 757 F.2d 1376, 1382–83 (3d Cir. 1985) (citing *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981)). Courts are also instructed to "determine whether the worker is 'dependent upon the business to which [she] render[s] service' or is, 'as a matter of economic reality,' operating an independent business for herself." *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 230 (3d Cir. 2019) (quoting *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)). We will take these FLSA instructions into consideration here.

    [4] Although the WPCL claim came to the panel on review of the denial of their motion for judgment as a matter of law, we exercise review of the employment status issue under the "merger rule," which provides that interlocutory orders, such as partial grants of summary judgment, "merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quoting *In re Westinghouse Sec. Litig.,* 90 F.3d 696, 706 (3d Cir. 1996)). Defendants also specify their request for review of the District Court's summary judgment order. Even if they did not do so, the Court has jurisdiction over orders "that are not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Trzaska v. L'Oreal USA, Inc.*, 865 F.3d 155, 163 (3d Cir. 2017) (quotation omitted). All three requirements are met here.

10

resolve the issue before trial based on the undisputed facts in the record. Accordingly, we review the District Court's determination on summary judgment de novo. *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991) (citing *United States v. Felton*, 754 F.2d 276, 278 (3d Cir. 1985)).

## 2.

Although Defendants urge us to find Accurso was an independent contractor based on his "independent contractor" agreement and his per-commission payment structure, we find that most of the factors indicate Accurso was an employee. Most significantly, the evidence clearly shows that Land exercised control over Accurso's work. As an initial matter, Land admitted at his deposition that he had the right to control Accurso's work. The record also contains multiple memoranda from Land to Accurso that not only assigned tasks to Accurso but communicated the way in which the tasks were to be completed. These directives included instructions for Accurso to "concentrate on 201 and 973 area codes" when marketing Defendants' roofing services and to work towards getting one appointment per week set up with a prospective client, as well as statements that Land would "fine tune [Accurso's] marketing efforts" and "refine [Accurso's] approach." Doc. No. 69-9 at 10–12, 31–32. Additionally, Land instructed Accurso to complete administrative tasks, which were not clearly related to the marketing work for which Accurso was contracted, and required him to keep Land informed of his activities. Despite Land's testimony at trial that, pursuant to his contract, Accurso was free to set the hours and days that he worked, the evidence shows that in reality, Land circumscribed Accurso's work hours and directed Accurso's movements. Accurso was also to provide

11

notice before taking vacation. In fact, Accurso's failure to give notice prior to taking a week off of work is listed in Defendants' letter as one of the reasons for Accurso's termination. Altogether, this evidence is indicative of Defendants' right to control Accurso's work.

In addition, most of the other factors—the responsibility only for the result of the work, the nature of the work or occupation, the skill required for performance, whether the work is part of the regular business of the employer—all indicate Accurso was an employee. Accurso was not just responsible for the result of his work: he was required to give regular reports to Defendants and was clearly tasked with providing ongoing support to grow and maintain Defendants' business. *Cf.*, *Lynch*, 5554 A.2d at 160–63 (noting that, in determining a football referee was an independent contractor, the referee's work was not directed by or "intended to benefit the home team" and he was therefore responsible for the result of the work only). Since Accurso was responsible for the majority of Defendants' administrative work, the nature of Accurso's work involved menial tasks for Defendants' business; this work did not require specialized skills; and his administrative, accounting, and invoicing tasks were clearly part of the regular business of the employer.

Although some factors—whether one employed is engaged in distinct occupation or business and which party supplies the tools—are mixed, Land also admitted that he required Accurso to work full time for Defendants and Accurso was not required to supply his own materials when he worked out of Defendants' official office at Land's residence.

12

The factor of whether Defendants had a right to terminate Accurso at any time is also equivocal as to Accurso's employment status. Accurso's contract did not include a termination clause, which would indicate that Defendants had the right to terminate employment at any time. But the District Court, in interpreting the employment agreement in a different section of its summary judgment opinion, determined Accurso could not be immediately terminated because the contract automatically renewed every two years and a party was required to give ninety days' notice to cancel the contract. Although the District Court did not opine about Accurso's employment status in coming to this conclusion, the District Court acknowledged that its interpretation of the contract would indicate Accurso was an independent contractor. The factor of whether Defendants had a right to terminate Accurso at any time could therefore support either employee or independent contractor status.

Moreover, we are skeptical that the contract, the terms of which appeared irrelevant to circumscribing either party's daily activities, should carry any weight. As the District Court noted, "an agreement of the parties to a designation of their relationship that is contrary to the employer/employee relationship established otherwise is unavailing to effect a change." *Accurso v. Infra-Red Servs., Inc.,* 119 F. Supp. 3d 316, 328 (E.D. Pa. 2015) (quoting *Nevin Trucking v. Workmen's Comp. Appeal Bd. (Murdock)*, 667 A.2d 262, 267 (Pa. Commw. Ct. 1995)).

The dissent emphasizes the difference between actual control and the right to control. Even though the dissent relies on cases in which the Pennsylvania Supreme Court applied common law, rather than the WPCL, to resolve torts claims, we are in

13

agreement that the right to control is more significant than actual control in determining employee/independent contractor status. We also do not dispute that the language of the contract indicates Accurso was to serve as an independent contractor, and, as such, Defendants would lack the right to control his work. Where we disagree is with the dissent's reliance on the contract's terms, including whether or not the contract allows for the right to immediately terminate Accurso, which is at odds with the evidence and the majority of the other factors, which point decidedly towards Accurso's employee status.

As we have discussed, neither party appears to have abided by the terms of the contract regarding both the scope and manner of Accurso's work. The nature of their relationship casts serious doubt on the persuasive value of the contract as a factor in determining whether Accurso was an employee or an independent contractor. Having determined, in this case, that the contract and its terms are not reliable evidence of a right to control, we looked to testimony and documentation, which conclusively indicated that Land and Accurso's relationship was such that Accurso was required to follow Land's instructions regarding tasks to complete and how the work was to be completed. Separate from the right to control, the evidence revealed that the majority of the other factors also demonstrated that Accurso was Defendants' employee.

Nevertheless, the dissent places great weight on the terms of the contract as an indication of the right to control Accurso. Part and parcel to the dissent's defense of the contract's import are the contract's terms regarding termination and its adoption of the District Court's interpretation of the contract that Accurso could not be immediately terminated.

14

As an initial matter, we exercise de novo review and need not take the District Court's view as to this factor.[5] *Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1292 (3d Cir. 1991) (citing *United States v. Felton*, 754 F.2d 276, 278 (3d Cir. 1985)). But even if we agreed with the District Court that Accurso could not be immediately terminated, this factor is not dispositive of the employee/independent contractor inquiry—the ultimate determination rests on a balancing of the multiple factors previously enumerated.[6]

Finally, the dissent sounds the alarm that our holding would preclude an employer from hiring "independent contractors to whom it could give any guidance because training, instructions, supplies, or support potentially convert their relationship into that of an employer/and an employee, regardless of whether the parties may have desired to have a contractor relationship when they entered into their contract." The dissent even goes so far as to characterize our holding as the transformation of the employee/contract test into the singular consideration of "whether the worker had the

---

[5] The dissent argues that Accurso is also judicially estopped from adopting the position that he believed that Defendants could terminate him at will. But this judicial estoppel assertion is irrelevant because, as we articulate above, even if we agreed with the District Court's determination that the "right to immediately terminate" factor points toward contractor status, this is one of many factors in a test where the majority of them point the other direction.

[6] The dissent would have us elevate the "right to immediately terminate" factor based on a quote from *Feller v. New Amsterdam Casualty Co.*, 70 A.2d 299, 300 (Pa. 1950). Notably, the opinion itself quotes other factors to consider, such as "the right to direct the way in which [the work] shall be done" and responsibility for the result only. *Id*. Moreover, the Pennsylvania Supreme Court ultimately determined that the defendant in that case was an employee even though he was paid on a commission basis and paid for his own supplies, because the plaintiffs directed the defendant to work specific hours and in particular places, required him to report to the plaintiffs about his work and progress, and would not allow the defendant to make any decisions regarding car purchases. *Id*. The facts are very similar here.

15

capacity to operate with complete independence." That is not our holding. The dissent's fears are unfounded because of the ample evidence that Defendants had the right to control Accurso's work. Where there is unmistakable evidence, as is present here, there is no ambiguity about the right to control or whether someone is an employee. The dissent's concerns are unsupported.

Since we agree with the District Court that the economic realities outweigh the terms of the agreement and the other formal factors, we will affirm the District Court's determination on summary judgment that Accurso was an employee. We also affirm the District Court's denial of Defendants' post-trial motion since there was sufficient evidence for the jury to have found that Accurso was owed back-pay for certain projects from 2011 and the District Court did not abuse its discretion.

Having made these determinations, we will reverse the District Court's decision to deny attorneys' fees to Accurso on the WPCL claim and remand to the District Court for further proceedings. It is clear that under the statute the prevailing party is entitled to attorneys' fees and the parties do not dispute this interpretation of the statute. *See* 43 Pa. Cons. Stat. § 260.9a(f) ("The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant."); *see also Oberneder v. Link Comput. Corp.*, 696 A.2d 148, 151 (Pa. 1997).

16

## B. Accurso's challenge to the EPPA Verdict

Next, we turn to Accurso's challenge that there was insufficient evidence for the jury to determine that Defendants were not liable under the EPPA. We disagree with Accurso, there was sufficient evidence, so we will affirm the District Court.

### 1.

The EPPA makes it unlawful for an employer "to require . . . any employee or prospective employee to take or submit to any lie detector test." 29 U.S.C. § 2002(1). The EPPA provides a "limited exemption" where an employer uses a polygraph "in connection with an ongoing investigation involving economic injury to the employer's businesses such as theft, embezzlement, misappropriation, or an act of unlawful industrial espionage or sabotage." § 2006(d)(1). To invoke this exception, the statute requires that the employee had access to the property that is the subject of the investigation, the employer has reasonable suspicion that the employee was involved in the activity under investigation, and the employer must execute a statement containing certain information about the activity being investigated and must furnish the statement, with all of the necessary signatures, to the employee. § 2006(d)(2)–(4). Finally, the exemption shall not apply unless the employer provides particular disclosures to examinees and the employer observes restrictions to certain questions, such as those regarding the examinee's religious or political beliefs. § 2007(b).

### 2.

In April 2009, Land proposed that Accurso undergo a second polygraph, because he was again under suspicion of diverting business from Defendants. Land scheduled the

17

examination for December 2010. There is a dispute as to whether Accurso actually took the 2010 exam, with Accurso testifying that he did and Land testifying that, by the time of the trial, he did not believe Accurso took the exam. Accurso was terminated in January of 2012.

Accurso argues that Defendants' request that Accurso take a second lie detector test, Defendants' letter threatening to terminate Accurso if Accurso failed the lie detector test, and Land's alleged discussion of the results of the 2010 test with Strein each amounted to a violation of the EPPA.[7] He also contends that the ongoing investigations exception should not apply, and the District Court erred in giving the exception instruction. Specifically, he asserts that Defendants did not comply with the "information and articulated safeguards" under § 2007(b). Pl.'s Br. at 22. Finally, Accurso maintains that the narrow language of the exemption only permits employers to "request" that an employee undergo a polygraph test. Accordingly, he asserts the exception does not apply to "an employer's use, acceptance, reference to, or inquiry concerning, the results of a lie detector test; nor is there any exemption for an employer's threatening to discharge an employee should he refuse, decline, or fail to take or submit to a lie detector test." *Id.*

---

[7] Although Accurso underwent a polygraph examination in March 2008, the points that Accurso raises refer to violations based on the 2010 examination. But to the extent that Accurso raises sufficiency of the evidence arguments as to the 2008 examination, the District Court had previously dismissed any claims based on Defendants having insisted that Accurso take the 2008 polygraph as time-barred so those arguments are limited to claims based on the consequences of 2008 examination that came to pass within the limitations period of three years. Nevertheless, Accurso admitted shortly after his 2008 examination that he did, in fact, divert business from Defendants. A reasonable jury could have determined that Accurso's 2012 termination was a result of Accurso's admission and not of his 2008 examination.

18

However, Land's testimony that he did not believe Accurso took the 2010 test essentially defeats all of Accurso's arguments. The jury could have properly credited Land's testimony, which would have rendered inapplicable the § 2007 safeguards related to the actual taking of a polygraph exam. *See Polkey v. Transtecs Corp.*, 404 F.3d 1264, 1269–70 (11th Cir. 2005) ("Because Polkey ultimately refused the polygraph exam, she never became an 'examinee', and [the defendant] accordingly never became obligated to provide her with the signed written notice required by § 2006(d)(4).").[8] The jury was therefore properly instructed on both the elements of the EPPA claim as well as the elements of the exemption, and evidence presented at trial sufficiently supported its finding that Defendants were not liable under the EPPA.[9]

Having determined there was sufficient evidence to support the jury's verdict on the EPPA claim, we also find no abuse of discretion in the District Court's decision to deny Accurso's motion for new trial or to alter/amend the judgment. We will affirm the District Court's denial of Accurso's post-trial motion as to the EPPA claim.

---

[8] It should be noted that the record confirms that Defendants complied with the requirements under § 2006(d) as well in invoking the exemption.

[9] Accurso also argues an additional jury instruction issue—that the District Court rejected his proposal to instruct the jury that the court had determined Accurso was an employee. The District Court reasoned that such an instruction was unnecessary because whether Accurso was an employee was not an element that the jury was being asked to decide in determining whether Defendants were liable under the EPPA. In other words, the jury instructions already assumed Accurso was an employee for purposes of his eligibility to recover under the EPPA, which would appear to be favorable to Accurso. Because we agree that it was not necessary in light of the instructions given, we will affirm the District Court's decision to not include the proposed jury instruction.

## C. Accurso's Challenge to the PUTSA Verdict

We also find there was sufficient evidence to support the jury's conclusion that Accurso misappropriated trade secrets. *See generally* 12 Pa. Cons. Stat. § 5302 (defining trade secrets under the PUTSA, and detailing the manner in which trade secrets can be misappropriated).

In its verdict, the jury made four specific findings of trade secrets Accurso misappropriated, which included Defendants' pricing information and Defendants' password and ID to the Hoover system, a database containing information about pricing of certain roofing jobs, past customers, and prospective customers. App. 198.

Accurso raises three issues, each of which is unavailing. First, he disputes the jury's finding that the database ID and password constituted a trade secret. He argues that Defendants did not "own" the ID and password information, so there was no loss to Defendants. Pl.'s Br. at 27. Although it appears Defendants initially received database username and password information from others, there is sufficient evidence to support the jury's finding that Defendants were no longer sharing that information at some point, and Accurso gave Defendants' private username and password without Defendants' knowledge or consent. The jury could therefore have determined that Accurso misappropriated this information because his "use of the trade secret" was "in violation of . . . confidence." *Moore v. Kulicke & Soffa Indus., Inc.*, 318 F.3d 561, 566 (3d Cir. 2003) (describing the elements of a trade secrets claim in Pennsylvania).

Second, Accurso makes a general argument that there was insufficient evidence for the District Court to have instructed the jury on this claim. We reject this contention

20

for the reasons above, but more important because there was both direct and circumstantial evidence presented at trial that Accurso shared Defendants' pricing information.

Finally, Accurso contends the District Court erroneously denied his motion in limine to preclude Land and Strein's lay testimony on damages. The District Court's determinations concerning the admissibility of evidence are reviewed for abuse of discretion. *See Merritt Logan, Inc. v. Fleming Cos., Inc.,* 901 F.2d 349, 359 (3d Cir. 1990).

Strein testified to her personal knowledge of the value of the Hoover database. Land testified, based on his personal knowledge, to losing $13,000 on the Hibbert Project bid because an outside bidder was suspected of having the pricing information and underbidding Defendants. This testimony is not hearsay, as Accurso contends; it was properly admissible.

Accordingly, we will not disturb the jury's verdict on the trade secrets claim against Accurso, and we find no abuse of discretion in the District Court's decision to deny motion for new trial or to alter or amend the judgment.

**D.      Defendants' Post-Trial Motion for PUTSA Attorneys' Fees and Punitive Damages**

We will also affirm the District Court's denial of attorneys' fees and punitive damages to Defendants for prevailing on the PUTSA claim.

Under Pennsylvania law, "[i]f willful and malicious [trade secrets] misappropriation exists, the court *may* award exemplary damages in an amount not

21

exceeding twice [the amount of compensatory damages]." 12 Pa. Cons. Stat. § 5304(b) (emphasis added). An award of "reasonable attorney fees, expenses and costs to the prevailing party: (1) if a claim of misappropriation is made in bad faith" is also permissible. § 5305(1). The plain language of the statute makes it clear that that the award of attorneys' fees and punitive damages is not mandatory.

In general, we review a district court's determination of attorneys' fees and punitive damages pursuant to PUTSA for abuse of discretion. *Krafft v. Downey*, 68 A.3d 329, 332–33 (Pa. Super. Ct. 2013); *cf. J.J. Deluca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 417 (Pa. Super. Ct. 2012) (noting that damages calculations are reviewed for abuse of discretion).

We see no reason to hold that the District Court abused its discretion when it denied attorneys' fees and punitive damages. Although the jury found Accurso's misappropriation was willful and malicious, the statute does not call for awarding punitive damages on that finding alone. *See, e.g.*, *Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 709 (Pa. Super. Ct. 2005) (noting the multiple considerations for assessing an award of punitive damages). The statute also does not prohibit the District Court from taking into account the parties' conduct, which is particularly relevant on the issue of punitive awards. For these reasons, we will affirm the District Court's denial of attorneys' fees and punitive damages to Defendants on the PUTSA claim.

### E.    Defendants' Post-Trial Motion to "Mold" the Verdict

Defendants had also moved to alter and amend the judgment in order to mold the verdict. Defs.' Br. at 33. This motion is reviewed for abuse of discretion. *Starceski*, 54

22

F.3d at 1095. Instead of having each side pay damages according to their respective verdicts, Defendants had requested that the District Court mold the verdicts or "net" the judgments so that only the party that owes the remainder would have to send the other side a check. Essentially, Defendants' reason for this request is that they do not trust Accurso to pay the total amount owed to Defendants.

Defendants presented no case law in support of their motion. In addition, our cases involving molding relate to ensuring that a verdict is consistent with a jury's answer to special interrogatories and Defendants do not request such relief here. *See, e.g.*, *Citizens Fin. Grp., Inc. v. Citizens Nat'l Bank of Evans City*, 383 F.3d 110, 123–24 (3d Cir. 2004) (rejecting a district court's decision to mold the verdict in a way that was contrary to a jury's response to an interrogatory regarding a trademark); *Smyth Sales v. Petroleum Heat & Power Co.*, 141 F.2d 41, 44 (3d Cir. 1944) (where "molding the verdict" refers to a district court's amendment of the verdict to include an amount of punitive damages that the jury did not expressly state, but reflected the jury's intent). So, while Defendants' request to mold the verdict to "net" the judgments owed by each party is an open question before our court, there was nothing compelling the District Court to follow Defendants' suggestion.

We will affirm the District Court.

## V. CONCLUSION

For the foregoing reasons, we will affirm the District Court's denial of Accurso's post-trial motion on the EPPA claim and the PUTSA claims. We will also affirm the District Court's denial of Defendants' post-trial motion on the WPCL claim, including

23

the District Court's conclusions regarding the WPCL on summary judgment.  However, we will reverse the District Court's denial of attorneys' fees to Accurso on the WPCL claim, and we will remand for further proceedings consistent with this opinion.

<u>Greenberg</u>, Circuit Judge, concurring in part and dissenting in part in <u>Accurso v. Infra-Red Serv., Inc.</u>, 18-1583 and <u>Estate of Accurso v. Infra-Red Serv. Inc</u>, 18-1607.

I concur with the majority on the EPPA and the trade secrets issues and join in its opinion on these points. I disagree, however, with its holding that Accurso was Defendants' employee for the purposes of his WPCL claim, and therefore I dissent from its conclusion on Accurso's WPCL claim and would enter judgment in favor of Defendants on that claim.

While I agree with the majority's statement of the applicable Pennsylvania law which governs this case, I believe that its application of that law to the facts in this case is incompatible with the opinions of the Pennsylvania Supreme Court. We have recognized that under Pennsylvania law "the difference between the independent contractor employee relationships turn[s] not so much on the fact of actual interference or exercise of control by the employer, . . . but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor." <u>Jones v. Century Oil U.S.A., Inc.</u>, 957 F.2d 84, 86 (3d Cir. 1992) (quoting <u>Feller v. New Amsterdam Cas. Co.</u>, 70 A.2d 299, 300 (Pa. 1950)). "[I]t is the existence of the right to control that is significant, irrespective of whether the control is actually exercised." <u>Universal Am-Can, Ltd. v. Worker's Comp. App. Bd.</u>, 762 A.2d 328, 333 (Pa. 2000). The majority acknowledges this important point of law, but in reaching its result it does not distinguish between the presence of actual control and the authority to control.

This distinction is real and significant because the Pennsylvania Supreme Court could have adopted a different standard to distinguish between contractor and employer-employee relationships. In this regard, I observe that in neighboring New Jersey there is no difference between actual control and the authority to control for the purpose of deciding whether a worker is an employee or a contractor. Thus, in New Jersey a worker's status as an employee can be established with evidence that the employer exercised actual control over the worker or had the authority to exercise that control. <u>See</u> <u>Hargrove v. Sleepy's, LLC</u>, 106 A.3d 449, 459 (N.J. 2015) (citing <u>Schomp v. Fuller Brush Co.</u>, 12 A.2d 702, 704-05 (Sup. Ct. 1940, <u>aff'd.</u>, 19 A.2d 780 (N.J. 1941)). On the other hand, as we made clear in <u>Jones</u> the Pennsylvania Supreme Court has stressed the distinction between actual control and authority to control when it held that "[t]he determining factor is not the way in which plaintiffs or defendant regards the relationship but 'what it really was under the facts and applicable rules of law.'" <u>Jones</u>, 957 F.2d at 86 (quoting <u>Feller</u>, 70 A.2d at 302). Thus, it is the authority to control that the Court should regard as determinative in this case.

In this case, it cannot reasonably be denied that under the provisions of the parties' contract, Defendants did not have authority to control any aspect of Accurso's work. I suggest that anyone who thinks I am wrong on that point should read the contract as it provides that Accurso would "determine the legal means" by which he accomplished his

work. Supp. App. at 2. Accordingly, the reader will find that the parties to the contract spelled out their understanding that Defendants would not have control over Accurso. Nothing could be clearer. Moreover, neither the majority nor either party suggests that Accurso's compensation was not entirely commission-based, surely some indication of his independent contractor status in this case dealing with one individual though admittedly of limited significance on that point. Furthermore, unlike in <u>Verma v. 3001 Castor, Inc.</u>, 937 F.3d 221 (3d Cir. 2019), where the employer had actual authority to control when the persons the employer claimed to be contractors could perform their services and the manner in which they performed those services by imposing financial penalties on them for noncompliance, <u>id.</u> at 225, 230, the contract in this case called for Defendants to pay the agreed-upon compensation to Accurso as long as he brought in business to Defendants without regard to how he obtained business. In fact, under the contract, Accurso would have been entitled to a commission even if he purchased Defendants' services himself.

I do not doubt that normally an employer effectively has the authority to control its employees because the employer retains the right to terminate the employment relationship at its will. Indeed, as the Pennsylvania Supreme Court has explained, "an extremely important consideration is the power of the master to terminate the relationship at any time with or without cause, since that tends strongly to show that the person employed is not an independent contractor but a servant." <u>Feller</u>, 70 A.2d at 301.[1] But there can be no such implied authority in this case because, as the District Court found in interpreting the contract, Defendants did not have the right to terminate the contractual relationship at will. <u>Accurso v. Infra-Red Servs., Inc.</u>, 119 F. Supp. 3d 316, 323 (E.D. Pa. 2015). It is significant that neither party challenges this interpretation on this appeal. It is clear that the District Court used this interpretation when applying the employee/contractor test for it explained that "as the Court has already concluded, the contract suggests that Mr. Accurso could not be fired without cause at any time but only upon the expiration of his contract." <u>Id.</u> at 328.[2] Simply put, there is no direct evidence in the record demonstrating that Defendants had actual authority to control Accurso.

I recognize that the facts in this case showed that the relationship between Defendants and Accurso was not one in which Accurso operated with the complete independence allowed under the contract. But that circumstance cannot support a

---

[1] I am not addressing a situation in which under a union-negotiated contract or on some other external basis there is a limitation on the employer's right to terminate an employee's employment. Rather, I am addressing principles of common law.

[2] The District Court recited that it was interpreting the contract but I believe that it may have been construing it. But I see no need to address the often elusive distinction between interpretation and construction in this case. <u>See</u> <u>Williams v. Metzler</u>, 132 F.3d 937, 946 (3d Cir. 1997).

2

conclusion that Accurso was Defendants' employee. If the exercise of actual control automatically implied or led to a presumption that the employer had the authority to control the worker there would be no reason to distinguish between the right to control and actual control even though the Pennsylvania Supreme Court recognizes such a distinction in an employee independent contractor analysis.

The evidence on which the majority relies to show the authority to control is Land's deposition testimony in which he indicated that he had the right to control Accurso's work and the manner with which Accurso did it. Nevertheless, Land overstated his belief as to his authority to control and his belief did not matter under Pennsylvania law because under the contract Accurso could refuse Land's direction without suffering any consequences for there were no contractual terms setting forth how he was required to perform his work and more importantly, Defendants could not terminate his services except as authorized in the contract without breaching the contract as they could have done when dealing with an employee. There should be no doubt about Defendants' lack of control because the contract defined the scope of Accurso's work but provided that he "shall determine the legal means by which it accomplishes the work specified by the company." Supp. App. at 2. Thus, the parties negated any possibility that Defendants could control Accurso.

Even if Accurso, while under contract, believed that Defendants could terminate him at will, we cannot adopt that position because he is judicially estopped from advancing it. The estoppel is derived from the fact that he had taken the opposite position in opposing Defendant's motion for summary judgment on his breach of contract claim by contending "that the contract would be cancelled only at the end of a two-year term" with the written notice given more than 90 days before the end of the term. Accurso, 119 F. Supp. 3d at 322. "Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that it has previously asserted in the same or in a previous proceeding." MD Mall Assocs., LLC v. CSX Transp., Inc., 715 F.3d 479, 486 (3d Cir. 2013) (citation omitted). Regardless, under Pennsylvania law, Accurso's subjective belief was no more relevant than Land's.

In any event, there are plausible reasons why Accurso could have chosen to follow Land's directions without becoming Defendants' employee. For all we know Accurso did not resist Land's exercise of control because he did not object to Land's directions even though he was not contractually required to follow them. In this regard, I observe that an independent contractor would want to cooperate with his employer as a matter of good business. Furthermore, there were any number of reasons why, at least initially, it was in both parties' interest for Accurso to allow Land to exercise a certain level of direction over him. Indeed, Defendants advanced support for this rationale when at oral argument before us, they stated that while Accurso was following Land's orders at the beginning of the contractual relationship, he was no longer doing so towards the end of the relationship.

3

Under the majority's holding an employer would be unable to hire independent contractors to whom it could give any guidance because giving training, instructions, supplies, or support potentially could convert their relationship into that of an employer and an employee, regardless of whether the parties may have desired to have a contractor relationship when they entered into their contract. The majority in essence transformed the employee/contractor test under Pennsylvania law from one concerned with the authority to control into one in which the test is whether the worker had the capacity to operate with complete independence. If he did not have that independence and the employer supervised him in any way then under the majority opinion he must be an employee. Certainly, a court may conclude that because of the inherent imbalance of power between employers and workers, any attempt by the employer to exert control over its workers is unlikely to be resisted regardless of whether the employer had the authority to exercise that control. However, absent any indication otherwise from the Pennsylvania Supreme Court or an act of the Pennsylvania legislature, I will not read such a paternalistic approach into Pennsylvania law. In conclusion I respectfully dissent from the majority with respect to the WPCL claim on which I believe that judgment should be entered for Defendants because Accurso cannot make a viable claim under that statute as he was not Defendants' employee.